880 So.2d 348 (2004)
The PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Appellant,
v.
Willie SMITH, Appellee.
No. 2002-CC-01026-COA.
Court of Appeals of Mississippi.
April 13, 2004.
Certiorari Denied July 29, 2004.
*349 Mary Margaret Bowers, attorney for appellant.
George S. Luter, Jackson, attorney for appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
GRIFFIS, J., for the Court.
¶ 1. The Appellee's motion for rehearing is denied. The original opinion is withdrawn, and this opinion is substituted.
¶ 2. Willie E. Smith, Jr. sought hurt-on-the-job disability benefits from the Public Employee's Retirement System ("PERS"). The Medical Board denied the claim and the denial was upheld by the Disability Appeals Committee and the Board of Trustees affirmed the denial. Smith then appealed to the Circuit Court of Hinds County. The circuit court reversed the order of the PERS Board and granted hurt-on-the-job disability benefits to Smith. PERS appeals this decision.
¶ 3. On appeal, PERS argues that the circuit court erred in reweighing the evidence and substituting its judgment for that of the administrative agency. PERS contends that there was substantial evidence to support PERS's determination that Smith was not disabled as the direct result of an on-the-job injury. We agree. Therefore, we reverse and render the judgment of the circuit court, and we reinstate the PERS order denying disability benefits to Smith.

FACTS
¶ 4. Smith began work as a laundry worker at the Mississippi State Hospital in Whitfield, Mississippi on October 1, 1992. Smith's position as a laundry worker required bending over and lifting with no specific weight requirements listed. Smith claims that while lifting laundry on duty on November 11, 1992,[1] he felt a sharp pain in his back and reported this to his supervisor.
¶ 5. Smith went to the MEA Clinic where he was treated for a "pulled muscle." Later, at the direction of some his co-workers, Smith went to Dr. John Frenz, a neurosurgeon, who diagnosed him with chronic low back syndrome and disc displacement herniation. On March 3, 1993, Dr. Frenz performed a lumbar exploration, *350 right laminectomy and right radical diskectomy on Smith. A detailed review of Smith's medical history and treatment, both before and after, is discussed below.
¶ 6. The injury at the State Hospital, in November of 1992, was neither Smith's first nor his only back injury. Smith had previously worked for the Mississippi Fair Commission and hurt his back while lifting steel horse stables. Smith was treated by orthopedic surgeon Dr. Pat Barrett, who performed an anterior interbody fusion in 1990 and released him in 1991 with a thirty percent whole body impairment and a thirty pound lifting restriction. Smith also injured himself in November of 1991 when he fell out of bed. He complained of pain in his back for much of that year. Smith also slipped and fell in a store prior to the November 1992 incident in question. Smith was also involved in an automobile accident sometime later, but whether he received any injury is not noted by any of his treating physicians.
¶ 7. On March 24, 1994, Smith applied to PERS for hurt-on-the job disability benefits, pursuant to Mississippi Code Annotated XX-XX-XXX(6), claiming that he was injured at the State Hospital on November 11, 1992. By then, Smith had also applied for but had not been approved for Social Security disability benefits. He was approved for Social Security disability benefits on March 31, 1995, with a disability onset date of December 3, 1992.
¶ 8. After his disability application was denied by the PERS Medical Board, Smith requested a hearing before the Disability Appeals Committee. At his hearing, Smith testified that he was injured on November 11, 1992, while pulling sheets from a tub at the Mississippi State Hospital.
¶ 9. During a supplemental hearing held before the Disability Appeals Committee, Smith introduced additional medical records and documentation from Dr. Frenz. The Disability Appeals Committee deferred a decision and ordered Smith to undergo a functional capacity evaluation. The evaluation indicated that Smith's "abilities did not match the job requirements of laundry worker."
¶ 10. The Disability Appeals Committee found insufficient evidence to establish that Smith was "permanently and totally disabled as a result of the on the job injury at the Medical Hospital." Subsequently, Smith filed two separate "Request for Judicial Notice" stating that from 1986 to 1995 PERS had a policy of accepting the determination of the Social Security Disability as automatic proof of eligibility for PERS disability benefits.
¶ 11. On appeal, the circuit court reversed PERS and concluded that "[t]he overwhelming medical evidence supports a claim of hurt-on-the-job disability that precludes Smith from performing his duties as Laundry Worker." The circuit court noted its reliance on the finding that Smith had been awarded disability benefits by the Social Security Administration.

STANDARD OF REVIEW
¶ 12. Judicial review of an administrative agency's decision is severely limited. As long as the reviewing court finds that the board's decision was supported by evidence and absent of fraud, they shall render the board's decision conclusive. Shannon Eng. & Constr. v. Emp. Sec. Comm'n, 549 So.2d 446, 449 (Miss.1989). Moreover, a court may only overturn a board's decision if it was (1) unsupported by substantial evidence, (2) arbitrary and capricious, (3) beyond the agency's authority to make, or (4) in violation of a statutory or constitutional right of the applicant. Pub. Employees' Ret. Sys. v. Dearman, 846 So.2d 1014, 1018 *351 (¶ 13) (Miss.2003); Pub. Employees' Ret. Sys. v. Dishmon, 797 So.2d 888, 891 (¶ 8) (Miss.2001).
¶ 13. "There is a rebuttable presumption in favor of a PERS ruling. Neither this Court nor the circuit court is entitled to substitute their judgment for that of PERS, and it is impermissible for a reviewing court to reweigh the facts of the case." Id. at (¶ 9) (citations omitted). When reviewing an administrative agency's decision, the circuit court must look at the full record before it in deciding whether the agency's findings were supported by substantial evidence. Miss. State Bd. of Exam'rs for Social Workers & Marriage and Family Therapists v. Perkins-Sander, 757 So.2d 1079, 1084 (¶ 15) (Miss.Ct. App.2000). While the circuit court performs limited appellate review, "it is not relegated to wearing blinders." Id.

ANALYSIS
¶ 14. There are two categories of disability benefits available to state employees: (1) regular disability benefits, pursuant to Mississippi Code Annotated Section 25-11-113(1)(a); and (2) hurt-on-the-job disability benefits, pursuant to Mississippi Code Annotated Section 25-11-114(6). Both categories use the same definition of "disability," i.e., whether a claimant has the ability to perform the usual duties of the employment or lesser duties assigned.
¶ 15. To be eligible for regular disability benefits, the state employee must have at least four years of state service. If eligible, disability benefits would be paid based solely on the definition of disability and regardless of whether the injuries occurred as a result of work-related activities. Smith was not eligible for regular disability benefits because he had less than one year state service.
¶ 16. Smith, however, was eligible for hurt-on-the-job benefits. Mississippi Code Annotated Section 25-11-114(6) (Rev.2003) provides that:
Regardless of the number of years of creditable service upon the application of a member or employer, any active member who becomes disabled as a direct result of an accident or traumatic event resulting in a physical injury occurring in the line of performance of duty, provided the medical board or other designated governmental agency after a medical examination certifies that the member is mentally or physically incapacitated for the further performance of duty and such incapacity is likely to be permanent, may be retired by the board of trustees....
(emphasis added).
¶ 17. To establish his claim for hurt-on-the-job disability benefits, Smith must prove two elements. First, was Smith disabled as defined by Mississippi Code Annotated Section 25-11-113(1)(a)? Second, if he was disabled, did Smith become disabled as the direct result of an on-the-job injury as required by Mississippi Code Annotated Section 25-11-114(6)?
¶ 18. PERS determined that the second element was the ultimate issue to be decided. PERS weighed the evidence and held that Smith's disability was not the direct result of an on-the-job injury. Adopting the Disability Appeals Committee's findings, PERS concluded:
A great deal of the medical record indicates that Mr. Smith's complaints are subjective, rather than objective. There are no objective measurements of pain, such as increased heart rate, other than subjective complaints of pain by Mr. Smith. Further, all of the medical documentation reviewed does not indicate that Mr. Smith sustained a hurt-on-the-job injury resulting in a disability. Mr. Smith has suffered back problems *352 for several years from several accidents and there is no indication that the incident at the State Hospital is the injury he contends now renders him disabled. The Disability Appeals Committee finds that there is not sufficient evidence to show that Mr. Smith is permanently and totally disabled as the result of a reported on-the-job injury at the Medical Hospital.

(emphasis added.)

1. Whether Smith presented substantial evidence that he was disabled pursuant to Mississippi Code Annotated Section 25-11-113(1)(a).
¶ 19. The circuit court reversed PERS based on the finding that there is little dispute that Smith was disabled and unable to perform his former job as a laundry worker. Whether Smith was disabled was not the sole issue of his claim. As indicated above, PERS's decision was not based on whether Smith met the Section 25-11-113(1)(a) definition of disability; rather, PERS concluded that Smith's disability did not directly result from his on-the-job injury.

2. Whether Smith's disability was the result of an on-the-job injury so as to meet the requirement of Mississippi Code Annotated Section 25-11-114(6).
¶ 20. Smith "has the burden of proving to the Medical Board and to the Appeals Committee that he or she is in fact disabled" to obtain disability benefits. Pub. Employees' Ret. Sys. v. Dishmon, 797 So.2d 888, 893(¶ 15) (Miss.2001). Likewise, Smith has the burden of proving that he was disabled as a direct result of an on-the-job injury. Miss.Code Ann. § 25-11-114(6) (Rev.2003).
¶ 21. The decision to deny Smith disability benefits was made by PERS through its Medical Board and Disability Appeals Committee, which consist of five medical doctors. These doctors review medical records, testimony and other evidence to determine, based on their professional medical opinion, whether the statutory requirements have been met. In Public Employees' Retirement System v. Howard, 2001-CC-01543, ____ So.2d ____, 2003 WL 22861804 (¶ 23) (Miss. Dec. 4, 2003), the Mississippi Supreme Court held:
Sorting through voluminous and contradictory medical records, then determinating whether an individual is permanently disabled is better left to physicians, not judges. This is the idea behind the creation and expansion of administrative agencies. "The existence within government of discrete areas of quasi-legislative, quasi-executive, quasi-judicial regulatory activity in need of expertise is the raison d'etre of the administrative agency." McGowan v. Mississippi State Oil & Gas Bd., 604 So.2d 312, 323 (Miss. 1992). "Because of their expertise and the faith we vest in it, we limit our scope of judicial review." Id.

(citations omitted.)
PERS, through its medical doctors, was in a far better position to evaluate Smith's medical history and the evidence presented to decide whether there was a direct causal connection between Smith's disability and the incident on November 11, 1992, at the State Hospital.
¶ 22. In Brinston v. Public Employees' Retirement System, 706 So.2d 258, 259(¶ 4) (Miss.Ct.App.1998), the claimant was denied disability benefits under Mississippi Code Annotated Section 25-11-114 on the basis that the disability was not the direct result of work-related activity. Brinston was employed at the Ellisville State School, and she was diagnosed with bilateral carpal tunnel syndrome. The diagnosis *353 predated the accident and injury in question. Id. at 259(¶ 2). Brinston was injured on May 7, 1993, when a patient shoved her against a wall, and she fell against her shoulder. At that time, Brinston had two years of service. Brinston claimed an on-the-job injury from her fall. She asserted that her condition deteriorated after the fall. She admitted, however, that she had medical problems with her hands before the incident. Id. at 259(¶ 3).
¶ 23. Brinston's claim for hurt-on-the-job disability benefits was denied by PERS "due to insufficiency of medical evidence to support the assertion that Brinston's disability was the direct result of an accident or traumatic event occurring in the line of performance of duty." Id. at 259(¶ 4). The evidence indicated that Brinston had a preexisting injury and that the fall may have aggravated her condition. Id. at 260(¶ 8). PERS concluded "that there was insufficient evidence to support a finding that Brinston sustained a disability as a direct result of an accident or traumatic event occurring in the line of performance of duty is supported by substantial evidence. It is clear that there were many other factors which may have contributed to or caused Brinston's condition and disability." Id. at 260(¶ 9). This Court strictly interpreted the language of Mississippi Code Annotated Section 25-11-114(6) and held:
[T]his Court may only apply the law as it is written, and the statute calls for the disability to be the direct result of the accident or traumatic event. The disability in question evolved over a period of time and events. There was not one accident or traumatic event which caused Brinston's disability. We therefore hold that the circuit court did not err in finding that the order and opinion of the Board was not in violation of the statute.
Id. at 260(¶ 11).
¶ 24. Just as in Brinston, there was not one accident or traumatic event which caused Smith's disability. Smith did not just have one back injury. Indeed, he had a significant history of multiple back injuries, accidents and medical treatment, both prior and subsequent to the November 11, 1992 incident at the State Hospital. Indeed, he was classified as disabled before he began work at the State Hospital. Smith's burden was to prove that the disability he claimed was the direct result of the injury that occurred at the State Hospital.
¶ 25. Here, PERS determined that Smith failed to meet this burden of proof. PERS concluded that "all of the medical documentation reviewed does not indicate that Mr. Smith sustained a hurt-on-the-job injury resulting in a disability. Mr. Smith has suffered back problems for several years from several accidents and there is no indication that the incident at the State Hospital is the injury he contends now renders him disabled."
¶ 26. The circuit court, however, relied on the Social Security Administration ("SSA") determination letter as persuasive evidence for its decision to reverse PERS and grant Smith disability benefits. In doing so, the circuit court concluded that the Disability Appeals Committee's omission of the SSA's finding of disability suggests that PERS acted in an arbitrary and capricious manner. We disagree.
¶ 27. In essence, the circuit court reasoned that PERS erred because it did not consider the SSA disability determination. This is contrary to Mississippi Code Annotated Section 25-11-113(1)(a)(Rev.2003), which provides that "the board of trustees may accept a disability determination from the Social Security Administration in lieu *354 of a certification of a medical board." Appellate courts of this state have uniformly held that an SSA determination of disability is not binding on PERS. See Doyle v. Pub. Employees' Ret. Sys., 808 So.2d 902, 907(¶ 16) (Miss.2002); Dishmon, 797 So.2d at 895-96(¶ 29); Pub. Employees' Ret. Sys. v. Waid, 823 So.2d 595, 596 n. 1 (Miss.Ct. App.2002); Pub. Employees' Ret. Sys. v. Thomas, 809 So.2d 690, 694(¶ 15) (Miss.Ct. App.2001).
¶ 28. In fact, the SSA determination letter contradicts Smith's claim that his disability was the direct result of an on-the-job injury. The SSA determination was rendered by the SSA administrative law judge on March 31, 1995. The SSA granted social security benefits and made the following detailed findings of Smith's extensive medical history:
The medical findings show that the claimant sustained an on-the-job injury to his back on March 21, 1989 which was diagnosed initially as lumbar strain. In March of 1990 a CT scan of the lumbosacral spine revealed central disc herniation at the L3-4. X-rays revealed narrowing of the L5-S1 disc space. The claimant was diagnosed as having herniated nucleus pulposus and underwent a laminectomy and interbody fusion of the L4-5. In April of 1990, the claimant was admitted to the hospital for possible thrombosis of the left leg. It was determined that he had pain and irritation possibly secondary to the femoral nerve from the activity with continued use of his brace (Exhibit # 16). In November of 1990, after a CT scan revealed probable pseudarthrosis at L5-S1, the claimant was admitted for a myelogram of the lumbar and cervical areas due to continued cervical spasm. The myelogram was negative (Exhibit # 18). In January of 1991 the claimant was admitted to the hospital for a posterior lateral fusion and instrumentation after developing pseudoarthrosis of the fusion area (Exhibit # 19). On November 12, 1991, the claimant was considered to have reached maximum medical improvement and was given a 15 percent partial permanent impairment secondary to the pain and stiffness. he was restricted to lifting 30 pounds and to stand or sit for no longer than one hour at a time. In February of 1992, claimant re-injured his back in a slip and fall accident in a store (Exhibit # 20). A physical examination in January of 1993 revealed that the claimant had a markedly positive straight leg raising test at 20 degrees on the right, 60 degrees on the left. Lumbar motion was up to a maximum of 30% of the expected normal in any of the 6 directions. Claimant had decreased sensation over the L5-S1 dermatome on the right and a positive jugular compression test. He had pain and spasm in attempting to heel and toe walk. He was unable to squat for more than a little ways and had weakness of the right foot dorsiflexor and knee extensor along with diminished medial hamstring and deep tendon reflex on the right. He was diagnosed as having chronic low back pain syndrome; lumbar radiculopathy secondary to his third back injury and intervertebral disc displacement-herniation (Exhibit # 21). In March of 1993, claimant was admitted to the hospital for lumbar exploration with L3, 4 and L4, 5 right laminotomy and radical diskectomy after he was diagnosed as having lumbar disc herniation, nerve root compression syndrome with radiculopathy (Exhibit # 22). Subsequent to this surgery the claimant began treatment at the Pain Clinic of Mississippi. He was depressed and cried often as well as drug reliant (Exhibit # 23).
¶ 29. According to the SSA, Smith was hurt on-the-job in March of 1989, which *355 resulted in several medical procedures through November of 1991. Smith was hurt again when he slipped and fell in February of 1992. SSA's finding on Smith's medical history cites each of the medical procedures performed in 1993, but it does not refer to any accident or injury that occurred in November 1992 at the State Hospital.
¶ 30. In addition, the SSA applied the Social Security Act definition of "disability."[2] The SSA's administrative law judge was not concerned with "how" Smith was injured, but instead was concerned with how long Smith would be unable to engage in any substantial gainful activity due to the impairment. If Smith was unable to engage in any substantial gainful activity for at least a year, regardless of the cause, then he would be entitled to Social Security benefits. Thus, the SSA determination focused solely on Smith's overall medical condition.
¶ 31. PERS's analysis was different. Unlike the SSA, PERS considered whether Smith became "disabled as a direct result of an accident or traumatic event resulting in a physical injury occurring in the line of performance of duty," which was required by Mississippi Code Annotated Section 25-11-114(6). The circuit court erred by relying on the SSA determination letter as evidence to support a finding of disability; instead, it was evidence that the SSA concluded that the November 1992 incident was not relevant to Smith's medical history and the SSA determination to grant disability benefits.
¶ 32. The pivotal question in this case is whether Smith's disability occurred as a direct result of the on-the-job injury. Thus, in our review to determine whether the PERS decision was based on substantial evidence, we review the medical information available to PERS.
¶ 33. Smith's first back injury occurred in 1989 when he was employed by the Mississippi State Fair Commission. According to a CAT scan and x-rays, Smith's back appeared normal. By July of 1989, Smith was released to full duty.
¶ 34. By September of 1989, Smith was noted to have disruption of a disc in his spine. In 1990, surgery was discussed, and Dr. Pat Barrett told Smith that the procedure would have a fifty percent chance of helping significantly and a ten percent chance of making it worse. Smith underwent the surgery in early 1990.
¶ 35. In May of 1990, Smith injured himself when he fell out of bed. He complained of pain in his back for much of that year.
¶ 36. In November of 1991, Dr. Barrett opined that Smith reached "probably maximum benefit" and concluded that Smith had a fifteen percent partial permanent impairment to the arthrodesis and a fifteen percent partial permanent impairment to the pain and stiffness. Dr. Barrett concluded that Smith was left with a "thirty percent impairment to the whole man." Dr. Barrett imposed a thirty pound lifting restriction and a limit of standing or sitting for one hour without a break.
*356 ¶ 37. Thereafter, but prior to the incident at the State Hospital, Smith slipped and fell in a store. As a result of this injury, he complained of low back pain. In March of 1992, Smith was released by Dr. Barrett to limited duty and to perform light lifting.
¶ 38. Prior to his employment with the State Hospital, Smith listed his occupation as "disabled" on a St. Dominic's medical form.
¶ 39. Notwithstanding Dr. Barrett's restriction, Smith went to work for the State Hospital in October of 1992. One month later, on November 11, 1992, Smith claimed that he was injured while at work. However, several days passed before Smith sought medical treatment. When he did, Smith went to the MEA Clinic and was treated for a "pulled muscle." There was no evidence of any further treatment by the MEA Clinic. There was no evidence that the MEA Clinic physician(s) referred Smith to Dr. Frenz. Instead, the evidence clearly indicated that Smith went to Dr. Frenz at the direction of some of his co-workers.
¶ 40. At the Mississippi Pain Clinic in 1993, Smith was able to walk three laps on the track and he stood for more or less than twenty minutes attempting to play volleyball. Smith also claimed that he injured his back in the Pain Clinic's pool. The Pain Clinic noted that Smith "said his pain level was 9.0 & [he] became defensive when questioned about intensity when he had just been outside talking & smoking."
¶ 41. Additionally, Smith was involved in an automobile accident-a fact the circuit court failed to discuss, despite the automobile accident occurring during the time that Smith was being treated by Dr. Winkelmann.
¶ 42. In April of 1996, Dr. Winkelmann noted that "I feel that he is probably most reluctant to return to any gainful employment." In May of 1996, Dr. Winkelmann noted:

I feel a lot of his complaints are augmented. I do not feel that physical therapy is indicated for him and frankly of the same opinion as last time, that I do not feel that he is returning to work whatever we do. An MMPI may be an indicated test in order to clarify possibility of malingering. At this point however I am not scheduling him for any return visit and have discussed the case with Dr. Summers. Incidentally when the patient left the clinic he was walking with antalgic gait and getting up out of the chair extremely cautiously, complaining of pain. When however getting in to his car and walking outside, we observed him walking without antalgic gait, and getting right into the car without any signs of discomfort, which only substantiates our concerns.

(emphasis added). The circuit court interpreted Dr. Winkelmann's note to mean that "Smith would have difficulty returning to work." However, Dr. Winkelmann's notes clearly illustrated his medical judgment that casts doubt on the severity and nature of Smith's claimed injury and associated pain.
¶ 43. Dr. Winkelmann's initial conclusion that Smith's complaints are "augmented" can only be interpreted to mean that, in his medical opinion, Dr. Winkelmann believed that Smith was enlarging or exaggerating his condition. Dr. Winkelmann's notation of his observation of Smith leaving the clinic can only be interpreted as evidence that Dr. Winkelmann was skeptical of Smith's claim of injury and associated pain.
¶ 44. PERS relied on a medical review of Smith's extensive medical history of back pain, together with Dr. Winkelmann's assessment, to make its conclusion. The *357 PERS doctors denied Smith's disability claim because they determined that Smith's medical history and the medical evidence sufficiently discredited Smith's allegation that his disability was the direct result of the November 1992 incident at the State Hospital.
¶ 45. At the PERS hearing in 1999, James Fentress, a rehabilitation counselor, testified on behalf of Smith. Fentress became involved in the case just before the hearing, approximately seven years after the incident, and he did not see Smith until the day of the hearing. These facts cast serious doubt on Dr. Frenz's affidavit of September 17, 1998, stating that it was his opinion "to a medical degree of probability that Mr. Smith's resulting back injury resulting in my treatment of him directly resulted from the traumatic event he suffered on November 11, 1992, while doing his job as a laundry worker at the Mississippi State Hospital." Fentress also testified that "according to the Dictionary of Occupational Titles laundry worker is described as medium work."
¶ 46. After Smith's first surgery, Dr. Barrett released him to return to light duty work not medium duty work, which according to Fentress was the type work Smith sought and accepted at the State Hospital. Prior to Smith's accepting the State Hospital employment, in April of 1992, Dr. Barrett had determined that Smith's back was not well, had restricted his work and had opined that he had a thirty percent disability to the whole man. Smith could not recall what happened to his back during the time period between April and October, when he accepted the position with the State Hospital.
¶ 47. Even after the November 1992 incident, Dr. Frenz's post-incident assessment of Smith's condition did not contradict Dr. Barrett's pre-incident assessment. In 1993, Dr. Frenz opined that Smith had an "impairment, to the body as a whole, approximately 25 percent (25%) due to injuries sustained 11/11/92."
¶ 48. Dr. Frenz's conclusion that the impairment was due to the injuries sustained in the November 1992 incident is the only evidence that provides any causal connection. However, Dr. Frenz does not explain his conclusion. Dr. Frenz's notes, dated December 7, 1992, also stated that Smith's "symptoms were similar to those he experienced on prior occasions of low back trouble for which he had two lumbar surgical procedures [in] March 1990 and January 1991 by Dr. Pat Barrett."
¶ 49. Dr. Frenz's conclusion does not obligate PERS's medical doctors to disregard their own professional opinions and accept Dr. Frenz's statement as conclusive evidence of a causal connection. Just as in Brinston, there was substantial evidence for PERS to determine that Smith's "disability in question evolved over a period of time and events. There was not one accident or traumatic event which caused [Smith's] disability." Brinston, 706 So.2d at 260(¶ 11).
¶ 50. The dissent contends that Smith's workers' compensation settlement is substantial evidence that Smith was hurt-on-the-job. Although the State Hospital paid benefits and reached a settlement with Smith over the injury, the settlement does not support a conclusion that Smith's disabling injury occurred on November 11. The workers' compensation settlement between Smith and his employer was not an admission of liability by Smith's employer. Neither the circuit court nor this Court can or should treat it as such. Indeed, such a finding would be contrary to the express terms of the settlement. Smith's employer joined Smith's petition of final compromise settlement, before the Mississippi Workers' Compensation Commission, with the following language:

*358 Without any admission of liability whatsoever, this employer joins in the foregoing Petition and prayer thereof for the specific and only purpose of concluding and compromising this disputed claim.
The workers' compensation settlement between Smith and his employer was without admission of liability. Therefore, it may not be relied on in a separate proceeding as an admission of liability by Smith's employer.
¶ 51. We find that there was substantial evidence to support PERS's finding that Smith's disability was not the direct result of the November 1992 incident at the State Hospital. Accordingly, we find that there was substantial medical evidence to support the PERS's denial of retirement benefits. We reverse and render the judgment of the circuit court and reinstate the PERS's order.
¶ 52. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND RENDERED AND THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM'S ORDER DENYING BENEFITS IS REINSTATED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., AND SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, AND CHANDLER, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING AND MYERS, JJ.
KING, P.J., Dissenting:
¶ 53. I dissent from the majority opinion herein.

1. Proof of Disability
¶ 54. After his injury on November 11, 1992, Smith went to the MEA clinic.[3] He later went to Brandon neurosurgeon Dr. John Frenz on December 3, 1992, who diagnosed him with chronic low back syndrome and disc herniation. Dr. Frenz later performed a lumbar exploration, right laminectomy and radical diskectomy on March 5, 1993.
¶ 55. Pain Clinic Director Dr. Ann Myers discharged Smith with little progress in controlling his pain and reported that Smith was "a poor candidate for return to previous employment" on May 5, 1993.
¶ 56. Consulting orthopaedic surgeon Dr. Sidney Berry examined Smith on September 30, 1993, and found that Smith had failed back syndrome with chronic pain and assessed a 10% permanent impairment.
¶ 57. University Medical Center pain management physician Dr. Jeff Summers found on March 15, 1994, that Smith's back was "very significant" and recommended epidural injections.
¶ 58. On April 18, 1994, University Medical Center orthopaedic surgeon Dr. R.A. McGuire found that Smith was suffering from epidural fibrosis that was chronic, severe and of poor prognosis. He also found that Smith suffered from failed back syndrome with epidural scarring. Dr. McGuire stated that he considered the disability to be permanent.
¶ 59. On April 29, 1994, Dr. Frenz reported that Smith had a 25% permanent impairment to the body as a whole and could lift no more than 15-20 pounds.
*359 ¶ 60. Dr. Summers reported on June 2, 1994, that he had "nothing more to offer this patient.... He still has too much pain to be considered a good candidate for spinal cord stimulation."
¶ 61. On June 29, 1994, Smith and the Department of Mental Health entered into a workers' compensation settlement for the injury that Smith suffered on November 11, 1992.
¶ 62. On March 31, 1995, the Social Security Administration rendered its opinion finding Smith disabled beginning December 3, 1992.
¶ 63. On March 15, 1996, Dr. Michael Winkelmann saw Smith on referral from Dr. Summers. Dr. Winkelmann stated, "I do not feel he is returning to work whatever we do." In his April 25, 1996 evaluation, Dr. Winkelmann described Smith as "a 37 year old black gentleman who is disabled secondary to a low back injury." Dr. Winkelmann also wrote, "I feel that he is probably most reluctant to return to any gainful employment but believe that he does have a degree of pain."
¶ 64. In his April 30, 1996 letter to Dr. Summers, Dr. Salil Tiwari described Smith as "a 37 year old right-handed male who is disabled and presents to my office with low back pain." In his history, Dr. Tiwari states that Smith "was doing well until a second injury in 1992. At that time the patient was in extreme pain and he went to see Dr. Frenz. Dr. Frenz reoperated on him. Unfortunately, the patient did not improve and in fact became worse." Dr. Tiwari stated he would recommend nonsurgical pain management only.
¶ 65. In his May 15, 1996 clinic notes, Dr. Winkelmann noted that Smith had been in an automobile accident "that exacerbated his pain complaints" but he did not see any change in Smith's physical exam. Dr. Winkelmann stated that "frankly I am of the same opinion as last time, that I do not feel that he is returning to work whatever we do." He suggested that Smith might need to be tested "in order to clarify possibility of malingering."
¶ 66. Smith testified at his first hearing on October 20, 1997, that he had pain every day and took three prescription drugs to help him with the pain. Also testifying at the hearing was vocational expert James Fentress that Smith's job as a laundry worker was a medium duty job and that Smith could not return to that job based on the restrictions imposed by Dr. Frenz, to lift no more than 15-20 pounds.
¶ 67. The functional capacity evaluation that Smith was ordered to undergo at the October 27, 1997 hearing and which was conducted on January 7, 1999, found that "the clients abilities do not match the job requirements of laundry worker. Specifically the PDC level of Medium and the ability to frequently bend or stoop to perform job demands is not established."
¶ 68. Dr. Frenz again saw Smith on January 18, 1999, and found Smith to suffer continued low back pain, lumbar radiculopathy, and possible nerve impingement.
¶ 69. In denying the disability claim, the Claims Appeal Committee stated: "A great deal of the medical records indicates that Mr. Smith's complaints are subjective rather than objective." The court in Public Employees' Retirement System v. Marquez, 774 So.2d 421, 427(¶ 22) (Miss.2000) rejected a similar argument from PERS stating that "[i]f medical diagnoses by licensed physicians are to be labeled `subjective' evidence of medical ailments, it is unclear what PERS would consider to be `objective' evidence."
¶ 70. Based on the record before this Court, there seems little dispute that Smith is disabled and unable to perform *360 his former job as laundry worker. While this Court and the circuit court must defer to the decision of the agency where it is supported by substantial evidence, that is not the case here. "If an administrative agency's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious." Id. at 430 (¶ 35). Substantial evidence has been defined as "something more than a `mere scintilla' or suspicion." Id. at 425 (¶ 13). It has also "been defined as `such relevant evidence as reasonable minds might accept as adequate to support a conclusion.'" Id. Here there is not substantial evidence to support PERS's decision.

2. Social Security Disability
¶ 71. As a part of PERS assignment of error, the agency argues that the circuit court erred in finding the decision of the Social Security Administration persuasive.
¶ 72. As noted by the circuit court, between 1986 and 1995, PERS accepted a favorable determination by the Social Security Administration as automatic proof of eligibility for disability under PERS. Mississippi Code Annotated Section 25-11-113(a) (Rev.2003) provides that "the board of trustees may accept a disability medical determination from the Social Security Administration in lieu of a certification from the medical board." The circuit court correctly found that "[w]hile Smith was not entitled to an automatic determination of eligibility for disability under PERS, the fact that he received a favorable determination from SSA is certainly persuasive...." However, when Smith filed his claim, it was the policy of PERS to accept the SSA determination of disability. This policy was changed after Smith's claim was filed. If PERS chose to disregard its policy with respect to Smith's claim, it had the burden of explaining the appropriateness of that decision. The failure to do so, would be indicative of an arbitrary and capricious action.
¶ 73. It is therefore curious that the opinion of the Disability Appeals Committee makes no mention of the determination by the Social Security Administration. While it is true that PERS is not required to adopt the findings of the Social Security Administration, it is not required to ignore them either.
¶ 74. On appeal, PERS tries to discredit the finding by the Social Security Administration by noting that a different date was used for the onset of disability. The date used was December 2, 1992, the date of Smith's first visit with Dr. Frenz, less than a month after the November 11, 1992 injury.
¶ 75. The findings and decision of the Social Security Administration are set forth below.
FINDINGS
After careful consideration of the entire record, the Administrative Law Judge makes the following findings:
1. The claimant met the disability insured status requirements of the Act on December 3, 1992, the date the claimant stated he became unable to work, and has not engaged in substantial gainful activity since that date.
2. The medical evidence establishes that the claimant has, which constitute (s) a severe impairment, but does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, regulation No. 4.
3. The claimant's complaints of symptoms and limitations are credible.

*361 4. The claimant lacks the residual functional capacity to perform sustained activity at any exertional level.
5. The claimant is unable to perform past relevant work as a auto detailer, janitor, car deliverer, laundry or dry wall finisher-rock sheet worker.
6. The claimant is 36 years old, which is defined as a younger individual, and has a limited education.
7. The claimant does not have any transferable skills to perform other work within his physical and mental residual functional capacity.
8. Based upon the claimant's residual functional capacity and vocational factors, there are no jobs existing in significant numbers which he can perform. This finding is based upon Section 202.00(h) of the Medical-Vocational Guidelines.
9. The claimant has been under a "disability," as defined in the Social Security Act, since December 3, 1992. (20 CFR 404.1520(f)).
DECISION
It is the decision of the Administrative law Judge that, based on the application filed on January 4, 1994, the claimant is entitled to a period of disability commencing on December 3, 1992, and to disability insurance benefits under Section 216(i) and 223, respectively, of the Social Security Act.
¶ 76. These findings are consistent with the claim of a November 1992 injury, rather than a February 1992 slip and fall.
¶ 77. Even without the Social Security Administration's findings, the overwhelming medical evidence still supports the conclusion that Smith was disabled. PERS points to no specific evidence to the contrary.

3. Proof of On-the-job Injury
¶ 78. On September 17, 1998, Dr. Frenz gave an affidavit that it was his opinion "to a medical degree of probability that Mr. Smith's resulting back injury resulting in my treatment of him directly resulted from the traumatic event he suffered on November 11, 1992, while doing his job as a laundry worker at the Mississippi State Hospital."
¶ 79. Smith testified at his hearing that he was injured on the job pulling linen sheets from a tub on November 11, 1992, at the Mississippi State Hospital and reported this to his supervisor.
¶ 80. Consistent with the position taken by the employer in the workers' compensation settlement reached with Smith, the representative of the Mississippi State Hospital stated in a document filed with PERS that he was unable to certify whether Smith was injured on the job. Somehow PERS wants this to be read as a denial that the injury occurred, which it is not. Nevertheless, the employer paid benefits and reached a settlement with Smith over the injury. At best, the settlement with the employer supports Smith's position that a disabling injury occurred on November 11. At worst, it merely represents a declaration of lack of knowledge by the employer.
¶ 81. In the absence of other evidence, the only conclusion is that there was sufficient proof of an on-the-job injury. PERS has not shown otherwise.

4. PERS Procedure
¶ 82. At the first appeal hearing before the Disability Appeals Committee on October 20, 1997, Smith's counsel asked for the names of the members of the Medical Review Board which had initially reviewed and denied Smith's disability claim. PERS's counsel objected, and no one present *362 at the hearing could answer the question. Subsequently, Smith's counsel was able to obtain an unsigned document showing that the doctors on the Medical Review Board were Drs. Perrin L. Berry, Raul Vohra, and Michael Winkelmann. Drs. Vohra and Winkelmann were in a business practice together at the Institute of Physical Medicine. Also in that practice was Dr. David Collip, who initially served as a member of the Disability Appeals Committee, which reviewed the Medical Review Board's denial of Smith's disability claim. Dr. Winkelmann was also a treating physician of Smith.
¶ 83. Smith's counsel filed a letter with the hearing officer of the Appeals Committee alleging a conflict of interest in Dr. Collip's sitting on the Appeals Committee. Dr. Collip did not sit at the subsequent hearings before the Appeals Committee.
¶ 84. In a series of cases, this Court and the Mississippi Supreme Court found that it was error for a member of the Medical Board to sit on the Appeals Committee. Pub. Employees' Ret. Sys. v. Dishmon, 797 So.2d 888 (Miss.2001); Byrd v. Pub. Employees' Ret. Sys., 774 So.2d 434 (Miss.2000); Dean v. Pub. Employees' Ret. Sys., 797 So.2d 830 (Miss.2000); Pub. Employees' Ret. Sys. v. Allen, 834 So.2d 50 (Miss.Ct.App.2002); Flowers v. Pub. Employees Ret. Sys. 748 So.2d 178 (Miss.Ct. App.1999). The present case does not involve the same situation, but does involve the same Dr. Winkelmann and casts serious doubts as to the integrity of the process by which PERS reviews its disability claims. We also note that the opinions of Dr. Winkelmann had a prominence in the opinion of the Disability Appeals Committee which seem disproportionate to his role in the treatment of Smith.
¶ 85. A rebuttable presumption exists in favor of PERS's decision and the burden of proving to the contrary is on the claimant, here Willie Smith. Dishmon, 797 So.2d at 891(¶ 9). In this case, the circuit court correctly found that Smith had carried his burden of proof, and that PERS's decision was arbitrary and capricious and not supported by substantial evidence. The evidence presented clearly shows that Smith was disabled as the result of an on-the-job injury. I would therefore affirm.
IRVING AND MYERS, JJ., JOIN THIS OPINION.
NOTES
[1] The date is sometimes given as November 4, 1992.
[2] PERS also points to other valid reasons it had for not considering the SSA letter as conclusive evidence in this case. Under PERS's rules, three physicians made the initial decision. At the SSA, lay personnel using a code book make the initial determination. The SSA allows the admission of non-medical evidence, e.g., an applicant's statement of pain that is not substantiated by objective medical evidence. Indeed, there were sufficient reasons and protections in place to substantiate PERS's decision not to rely upon the SSA decision. PERS's decision to disregard the SSA decision was neither arbitrary nor capricious.
[3] Smith's medical records from MEA could not be found at the time he presented his claim for disability. Contrary to the position taken by PERS, this was not evidence that Smith was never treated. Dr. Frenz's medical records show that he received medical X-rays from Smith's visit to the MEA clinic.