983 So.2d 342 (2008)
PUBLIC EMPLOYEES' RETIREMENT SYSTEM APPELLANT, Appellant,
v.
Arlene WARNER, Appellee.
No. 2007-SA-00101-COA.
Court of Appeals of Mississippi.
March 4, 2008.
Rehearing Denied June 3, 2008.
*343 Mary Margaret Bowers, attorney for appellant.
Willie T. Abston, Jackson, Wendy Schenique Wilson, attorneys for appellee.
Before KING, C.J., ROBERTS and CARLTON, JJ.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. The Public Employees' Retirement System (PERS) appeals the Hinds County Circuit Court's judgment to overturn the PERS Board of Trustees's (Board) decision that denied disability benefits to Arlene Warner. On appeal, PERS claims: (1) the circuit court erred when it declined to dismiss Warner's appeal because Warner never filed a brief with the circuit court, (2) the circuit court impermissibly re-weighed the facts of the case and substituted its opinion for that of the factfinder, and (3) the Board's decision was *344 proper as it was supported by substantial evidence. After careful consideration within the bounds of our mandatory standard of review, we must conclude that the circuit court committed reversible error when it re-weighed the evidence and reversed an administrative decision that was based on substantial evidence. Accordingly, we reverse the circuit court's judgment and reinstate the Board's decision.

FACTS
¶ 2. In October 1995, Warner began working as a secretary at Robert Lewis Middle School in the Natchez-Adams school district. Approximately five years later, Warner began to complain of pain in her hands. In an attempt to accommodate Warner, the school district transferred her to the Natchez High School. Warner continued to complain of pain in her hands. The school district again attempted to accommodate Warner when it transferred her to the Central Alternative School.
¶ 3. Warner's family physician referred Warner to Dr. J.H. Fairbanks. On April 4, 2001, Warner had her first appointment with Dr. Fairbanks. Dr. Fairbanks diagnosed Warner with bilateral carpal tunnel syndrome. Approximately three weeks later, Dr. Fairbanks performed a "bilateral carpal tunnel release." Incident to Warner's May 8, 2001, appointment, Dr. Fairbanks noted that Warner was not experiencing symptoms of carpal tunnel syndrome. Therefore, Dr. Fairbanks released Warner to return to work with no restrictions.
¶ 4. Dr. Fairbanks's medical records incident to Warner's June 5, 2001, appointment indicate that, as of that date, Warner had returned to full-time work. Dr. Fairbanks noted that Warner complained of pain, but Dr. Fairbanks was of the opinion that Warner's pain was from overuse of her hands. Dr. Fairbanks opined that activity would help Warner get better faster. Dr. Fairbanks also opined that Warner's pain would diminish over time. On July 9, 2001, Dr. Fairbanks assigned Warner a 0% impairment rating, assessed no work limitations, and released her from his care.
¶ 5. Approximately eleven months later, Warner had an appointment with Dr. Shelby Brantley at Plastic & Hand Surgery Associates, PLLC in Jackson, Mississippi. Warner complained of numbness and tingling in both hands. Dr. Brantley thought that Warner's history was consistent with persistent carpal tunnel syndrome. Dr. Brantley did not think that steroid injections, splints, or "nonsteroids" would help.
¶ 6. Dr. Brantley recommended surgery to explore Warner's problems and "epidural releases around the median nerve." Dr. Brantley informed Warner that there was a small chance that she would be totally relieved of her pain, but it was a reasonable chance of improvement. Dr. Brantley also opined, "this is work related and she has not achieved maximum medical improvement and a permanent impairment rating cannot be signed at this juncture." On two separate dates, Warner again underwent carpal tunnel surgery. On September 30, 2002, Dr. Brantley released Warner to return to regular duty at work. Dr. Brantley saw Warner once in October 2002 and once in November 2002. Warner complained of numbness in her left hand, but Dr. Brantley could not determine the cause of Warner's complaints. Again, Dr. Brantley told Warner she could return to work.
¶ 7. Dr. Brantley continued to treat Warner throughout January 2003. During February 2003, Dr. Brantley noted that he had done all he could for Warner. Dr. Brantley referred Warner to Dr. Carroll McLeod, a "pain specialist."
*345 ¶ 8. Warner last worked during February 2003. She first saw Dr. McLeod in March 2003. Dr. McLeod administered a nerve block. Two weeks later, Warner returned to Dr. McLeod as scheduled. Warner continued to complain of pain, so Dr. McLeod performed another ganglion block. In early April 2003, Maureen Hardy, a physical therapist, performed a functional capacity evaluation on Warner at the Hand Management Center within St. Dominic's Memorial Hospital in Jackson, Mississippi. Hardy recorded her findings and forwarded them to Dr. Brantley.[1]
¶ 9. Dr. McLeod performed an additional "stellate ganglion block" and a "Bretylium bier block" in April 2003. In May 2003, Dr. McLeod performed a final Bretylium block. Because Warner had not worked since February 2003, on May 17, 2003, the Natchez-Adams School District terminated Warner's employment. On May 28, 2003, Dr. McLeod noted his concern about Warner's complaints of ongoing pain without any objective evidence of an ongoing problem. In any event, Dr. McCleod released Warner with no restrictions.

PROCEDURAL HISTORY
¶ 10. On July 23, 2003, Warner applied for disability benefits with PERS. PERS requested an independent medical review. In September 2003, Warner saw Dr. David Collipp, at PERS's request. Dr. Collipp concluded that Warner would be capable of full-time data entry within eight weeks of that appointment. Dr. Collipp also concluded that Warner no longer had carpal tunnel syndrome.
¶ 11. In November 2003, the PERS Medical Board found insufficient evidence to support Warner's claim that carpal tunnel syndrome prevented her from performing her employment duties. Warner appealed to the PERS Disability Appeals Committee (Appeals Committee). The Appeals Committee recommended that the Board affirm the Medical Board's decision to deny benefits. The Board followed the Appeals Committee's recommendation. Warner then appealed to the Hinds County Circuit Court. On December 6, 2006, the circuit court reversed the Board's decision. According to the circuit court, the Board's decision was not supported by substantial evidence. Aggrieved, PERS appeals.

STANDARD OF REVIEW
¶ 12. We conduct a limited review of an administrative agency's decision. Pub. Employees' Ret. Sys. v. Howard, 905 So.2d 1279, 1284(¶ 13) (Miss.2005). We leave an agency's decision undisturbed unless the agency's decision: "(1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates one's constitutional rights." Id. (Citation omitted).

ANALYSIS
I. WHETHER THE CIRCUIT COURT ERRED WHEN IT OVERRULED PERS'S MOTION TO DISMISS WARNER'S APPEAL.
¶ 13. On May 14, 2004, Warner filed her notice of appeal with the circuit court. On October 7, 2004, Warner filed a document titled, "Arlene Warner's Appeal and Response to the Board of Trustees of the Public Employees' Retirement System's Proposed Statement of Facts, Conclusions *346 of Law and Recommendation."[2] Nineteen days later, PERS filed a motion to dismiss Warner's appeal.
¶ 14. PERS cited Rule 5.06 of the Uniform Rules of Circuit and County Court Practice. Rule 5.06 provides that "the briefs filed in an appeal on the record must conform to the practices in the Supreme Court." PERS also cited Mississippi Rule of Appellate Practice 28(a) for the proposition that an appellant's brief "shall contain under appropriate headings and in the order here indicated:" (1) a certificate of interested persons, (2) a table of contents, (3) a statement of issues, (4) a statement of the case, (5) a summary of the argument, (6) the relevant argument, and (7) a conclusion. PERS submitted that Warner's failure to comply with the requirements of Rule 28(a) was the equivalent of failing to prosecute her appeal and to file a timely brief. See M.R.A.P. 28(a).
¶ 15. Warner responded and admitted that she did not file a document that met the requirements of Rule 28 in that she did not include the contemplated headings. Warner also submitted that her noncompliance with Rule 28 did not require dismissal. Warner relied on Rule 2(a)(2) of the Mississippi Rules of Appellate Practice, which states, "An appeal may be dismissed upon a motion of a party or on the motion of the appropriate appellate court: (i) when the court determines that there is an obvious failure to prosecute an appeal; or (ii) when a party fails to comply substantially with these rules."
¶ 16. In effect, Warner argued that she substantially complied with Rule 28 in substance if not in form. See M.R.A.P. 28. The circuit court agreed with Warner. According to the circuit court, "failure to [include] headings as articulated in Miss. R.App. P. 28 does not amount to an `obvious failure to prosecute' or a failure to `comply substantially with the [sic] these rules.'" (emphasis in original). PERS appeals this ruling.
¶ 17. We find that the circuit court did not abuse its discretion. Rule 2(a)(2) specifically addresses "discretionary dismissal." M.R.A.P. 2(a)(2). Rule 2(a)(2) states that a reviewing court "may" dismiss an appeal under two circumstances: (i) an "obvious failure to prosecute an appeal" and (ii) a failure to "substantially" comply with the rules of appellate procedure. Id. The circuit court could have reasonably concluded that Warner did not demonstrate an "obvious failure to prosecute an appeal." Likewise, the circuit court could have reasonably concluded that Warner did not fail to substantially comply with the rules of appellate procedure. Therefore, we find that the circuit court acted within its discretion.
II. WHETHER THE CIRCUIT COURT IMPERMISSIBLY RE-WEIGHED THE FACTS AND SUBSTITUTED ITS FINDINGS FOR THAT OF THE BOARD'S.
III. WHETHER THE BOARD'S DECISION WAS BASED UPON SUBSTANTIAL EVIDENCE.
¶ 18. PERS claims the circuit court impermissibly re-weighed the evidence when it reversed the Board's decision to deny Warner's claim for benefits. Similarly, PERS claims the Board's decision was supported by substantial evidence. Since these two issues are interrelated, it is appropriate to resolve them with one analysis.
*347 ¶ 19. According to the record, the circuit court found as follows:
The Court has conducted an objective review of the record and finds that the decision of the Full Commission [sic] was not supported by substantial evidence. Ms. Warner has worked for the Natchez, Adams County, Mississippi School District and now suffers from a disabling condition. In support of the Court's objective view, the Court notes that Ms. Warner was assigned the following impairment rating: the right hand, median nerve at the wrist level a 21% of upper extremity and the left hand, median nerve at the wrist level a 11% of upper extremity making her total upper extremity impairment 25% and 29% based on the Functional Capacity Evaluation performed in April 2003. The Committee found that Ms. Warner has carpal tunnel syndrome and has sought the appropriate treatment. In addition, Ms. Warner is still under the care of Dr. Feldman for carpal tunnel. The Court finds that PERS'[s] decision to deny disability benefits to Ms. Arlene Warner was not supported by substantial evidence and was therefore, arbitrary and capricious.
PERS submits that the circuit court went beyond its permissible standard of review when it re-weighed the evidence. According to PERS, it is obvious that the circuit court re-weighed the evidence because the circuit court applied greater weight to Dr. Brantley's impairment ratings than the Board applied. PERS concludes that the circuit court substituted its view for the Board's. We agree.
¶ 20. "For the purpose of disability determination, the medical board shall apply the following definition of disability: the inability to perform the usual duties of employment or the incapacity to perform such lesser duties if any, as the employer, in its discretion, may assign. . . ." Miss.Code Ann. § 25-11-113(1)(a)(Rev.2006). The circuit court was bound by the same standard of review as this Court. "If the decision is supported by substantial evidence, appears neither arbitrary or capricious, nor beyond the Board's authority, and [it] is not found to be in violation of a constitutional or statutory right of the affected party, the court's obligation is to affirm." Pub. Employees' Ret. Sys. v. Cobb, 839 So.2d 605, 609(¶ 13) (Miss.Ct.App.2003). Substantial evidence is relevant evidence that reasonable minds might find adequate to support a conclusion. Id. at (¶ 14). "There is a rebuttable presumption in favor of a PERS ruling." Pub. Employees' Ret. Sys. v. Smith, 880 So.2d 348, 351(¶ 13) (Miss.Ct.App.2004) (citation omitted). "Neither this Court nor the circuit court is entitled to substitute their judgment for that of PERS, and it is impermissible for a reviewing court to reweigh the facts of the case." Id. Reviewing the record pursuant to that standard of review, it is clear that the Board's decision was supported by substantial evidence. Conversely, the Board's decision was neither arbitrary nor capricious.
¶ 21. Reasonable minds could find that the evidence was adequate to support the Board's conclusion that Warner was not disabled. While Hardy applied an impairment rating to both of Warner's hands, absolutely no physician concluded that Warner was functionally disabled. Dr. Fairbanks treated Warner and later released her to return to work. Dr. Brantley also released Warner to return to work, as did Dr. McLeod. Dr. Collipp found that Warner could return to work. Dr. Collipp conducted an examination to determine the degree of strength in Warner's hands. Warner scored a one out of a possible score of five. Prior to that strength test, Dr. Collipp had observed Warner removing her wrist braces. According *348 to Dr. Collipp, Warner would not be able to remove her wrist braces if she had as little hand strength as the test indicated.
¶ 22. On appeal, Warner points out that Dr. Collipp only spoke to her and observed her for twenty-two minutes. According to Warner, Dr. Collipp did not physically examine her. Warner also attacks Dr. Collipp's credibility. Warner asserts that, in Smith, Dr. Collipp served as a member of the Disability Appeals Committee that reviewed the Medical Review Board's decision to deny benefits. Smith, 880 So.2d at 361-62(¶ 82). Warner submits that there is a relationship between PERS and Dr. Collipp and that Dr. Collipp's involvement should cast doubt as to the integrity of the PERS review process. First and foremost, the weight of Dr. Collipp's testimony is a matter for the fact-finder. We are only called upon to determine whether substantial evidence supported the Board's decision. Second, Dr. Collipp's prior involvement with PERS was not made part of the record during Warner's hearing. We are prohibited from considering matters first raised on appeal. Alexander v. Daniel, 904 So.2d 172, 183(¶ 26) (Miss. 2005). Finally, even if we totally disregarded Dr. Collipp's testimony, there would still be substantial evidence to support the Board's decision.
¶ 23. There seems to be no doubt that Warner suffered from carpal tunnel syndrome. What is more, according to Frederick Long's testimony, Warner was a model employee. However, our limited role does not allow us to re-weigh the evidence, and the circuit court was similarly bound. Based on our review of the record, we must conclude that substantial evidence supported the Board's decision. Therefore, we reverse the decision of the circuit court and reinstate the decision of the Board.
¶ 24. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED AND JUDGMENT IS RENDERED TO REINSTATE THE DECISION OF THE BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.
NOTES
[1] On April 25, 2003, Dr. Brantley sent a letter to Warner's workers' compensation carrier. Dr. Brantley's letter reflected a 21% impairment rating on Warner's right hand and an 11% impairment rating on her left hand. After assigning impairments for strength loss, Warner's total upper extremity impairments were increased to 29% and 25%, respectively.
[2] The record does not contain a copy of Warner's "Appeal and Response to the Board of Trustees of the Public Employees' Retirement System's Proposed Statement of Facts, Conclusions of Law and Recommendation."