ROBERTS, J.,
for the Court:
¶ 1. The Public Employees’ Retirement System (PERS) appeals the Hinds County Circuit Court’s judgment to reverse PERS’s decision that William Collins was ineligible for disability benefits based on coronary artery disease (CAD). Finding that substantial evidence supported PERS’s decision, we reverse the judgment of the circuit court and render to reinstate the PERS’s decision.
FACTS AND PROCEDURAL HISTORY
¶ 2. Collins is a fifty-seven-year-old man from the Hurley community in Jackson County, Mississippi. After graduating from high school, he worked for International Paper for twenty-five years. When the International Paper plant shut down, Collins began working for the Jackson County School District as a maintenance worker.
¶ 3. During April 2006, Collins underwent his first angioplasty procedure, during which two stents were used to improve blood flow to Collins’s heart. Collins’s cardiologist, Dr. Georges Feghali, prescribed aspirin, Plavix, lisinopril, and Lipitor. Collins returned for a follow-up visit in May 2006. He reported that he was doing fine but he felt fatigue. He also reported that he had stopped taking Lipitor. Dr. Fe-ghali adjusted Collins’s medications and scheduled a return visit for six months later.
¶ 4. During September 2006, Collins had an appointment with Dr. Mahmoud Zayed, another cardiologist. Collins reported that he felt worse than he did before the angioplasty. Dr. Zayed noted that the stent had produced excellent results, although Collins had borderline blockage of the right coronary artery. Dr. Zayed adjusted Collins’s medications. Dr. Feghali saw *1157 Collins again on September 21, 2006. He reported some improvement and attributed it to having stopped taking Plavix. Dr. Feghali noted that he believed Collins was experiencing anxiety and depression because Collins believed he was limited due to having been diagnosed with CAD. Dr. Feghali told Collins to return to his previous level of activity with no limitation.
¶ 5. In July 2007, Collins injured his back at work while installing cabinets. He later underwent physical therapy. During his sessions, he complained of lower back pain and pain in his leg and knee. Collins told his physical therapist that he was not taking Plavix and was only taking aspirin on a daily basis. Collins was released from physical therapy in December 2007.
¶ 6. In March 2008, Collins had an appointment with Dr. Feghali. Dr. Feghali noted that Collins had failed to report for several appointments and had taken himself off of all medications except aspirin. Collins reported that he began having chest pain when he exerted himself. He further reported that he began experiencing chest pain approximately two months earlier. Test results were normal, but Dr. Feghali recommended a heart catheterization, which indicated that one of Collins’s blood vessels was significantly diseased. As a result, Collins underwent another angioplasty procedure. Dr. Feghali prescribed aspirin and statins for the remainder of Collins’s life, Plavix for a year or two, and cardiac rehabilitation — including diet and exercise education.
¶ 7. When Collins returned for a followup appointment with Dr. Feghali, he reported that he was doing fine. He denied that he had any chest pain or shortness of breath. However, in May 2008, Collins returned to Dr. Feghali’s office and complained that he experienced periodic chest pain — mainly when at work. He also explained that he felt he could no longer work after his surgery. Even so, Collins reported that he sometimes jogged or did heavy work without experiencing any chest pain. A subsequent “Perfusion Study” of Collins’s heart returned no negative results. During another appointment with Dr. Feghali later that month, Collins reported that he had not been working, and he was feeling better.
¶ 8. In May 2008, Collins underwent a Perfusion Study of his heart, which returned positive results. When Collins returned to his cardiologist and reported fatigue, his cardiologist noted there were no negative indications on the treadmill or scan. Following the stent, Collins reported that his chest pain was resolved, but he experienced shortness of breath and fatigue.
¶ 9. On June 6, 2008, Collins applied for non-duty related disability based on coronary artery disease. When his employment ended on June 30, 2008, Collins had five and one half years of service credit. Dr. Feghali and Dr. Zayed prepared “Form 7” reports for Collins. Neither cardiologist listed any permanent impairments.
¶ 10. Dr. Sam Peeples, a general practitioner, performed an independent medical evaluation on July 30, 2008. Dr. Peeples saw Collins for a total of fifteen minutes. After reviewing Collins’s medical records, Dr. Peeples noted that Collins had CAD, but he discounted Collins’s complaints as being psychiatric in nature. Dr. Peeples concluded he could not find Collins was physically or psychologically disabled to the point that resulted in permanent and likely total occupational disability.
¶ 11. In July 2008, Collins had another appointment with Dr. Feghali. Neither the EKG nor the catheterization that followed indicated that any further surgical procedures were warranted. Dr. Feghali *1158 noted Collins should be treated for depression if the catheterization did not explain Collins’s fatigue — which it did not.
¶ 12. Dr. Feghali wrote a memo dated September 11, 2008, in which he stated that he had treated Collins for CAD since 2006 and that he had pulled Collins from work due to unstable angina and re-stent-ing due to restenosis. Dr. Feghali also noted that Collins continued to have shortness of breath of chest pain at work due to physical activity.
¶ 18. The PERS Medical Board denied Collins’s disability claim. Collins appealed, and in November 2008, he went before the PERS Disability Appeals Committee (the Committee) for a hearing. The Committee recommended that the Board of Trustees (the Board) deny Collins’s claim. The Board accepted the Committee’s recommendation and adopted its findings of fact and conclusions of law. Collins then appealed to the Hinds County Circuit Court. The circuit court found that the Committee’s decision was arbitrary and capricious and that it was unsupported by the substantial evidence in Collins’s favor. Accordingly, the circuit court reversed the Committee’s decision. Aggrieved, PERS appeals.
STANDARD OF REVIEW
¶ 14. “Judicial review of an administrative agency’s decision is severely limited. As long as the reviewing court finds that the board’s decision was supported by evidence and absent of fraud, they shall render the board’s decision conclusive.” Pub. Employees’ Ret. Sys. v. Smith, 880 So.2d 348, 350-51 (¶ 12) (Miss. Ct.App.2004). When reviewing an administrative agency’s decision, it is necessary to review the full record before deciding whether the agency’s findings were supported by substantial evidence. Id. at 351 (¶ 13). However, “[t]here is a rebuttable presumption in favor of a PERS ruling. Neither this Court nor the circuit court is entitled to substitute [its] judgment for that of PERS, and it is impermissible for a reviewing court to reweigh the facts of the case.” Id. This Court only overturn the Board’s decision if it was either “(1) unsupported by substantial evidence, (2) arbitrary and capricious, (3) beyond the agency’s authority to make, or (4) in violation of a statutory or constitutional right of the applicant.” Id. at 350 (¶ 12).
ANALYSIS
¶ 15. Collins claimed that he was entitled to disability benefits for CAD, which he did not sustain in the course and scope of his employment. Mississippi Code Annotated section 25 — 11—113(l)(a) (Rev.2010) provides:
Upon the application of a member or his employer, any active member in state service who ... has at least four (4) years of membership service credit ... may be retired by the board of trustees ... provided that the medical board, after an evaluation of medical evidence that may or may not include an actual physical examination by the medical board, certifies that the member is mentally or physically incapacitated for the further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired.
Section 25 — 11—113(l)(a) defines “disability” as:
[T]he inability to perform the usual duties of employments or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by the Public Employees’ Retirement System (Section 25-11-101 et seq.) that is actually offered and is within the same *1159 general territorial work area, without material reduction in compensation.
PERS has the sole responsibility of assessing the evaluations by medical personnel and determining which evaluations to rely upon. Pub. Employees’ Ret. Sys. v. Lewis, 954 So.2d 440, 446 (¶ 13) (Miss.Ct.App.2006).
¶ 16. In adopting the Committee’s recommendation, the Board found as follows:
Mr. Collins is claiming that he has a disability because of heart disease as evidenced by his stents and that he has been told by his doctors that he is a very sick man and cannot work any longer. He specifically denies any psychiatric problems like depression or anxiety. Mr. Collins says he has angina and fatigue and that he cannot take his statin medications because they make him feel worse. This Committee, which is composed of two physicians and a nurse/at-torneyf,] were able to discuss Mr. Collins’s medical records and symptoms with him. We were able to watch him. It is clear that Mr. Collins believes he can no longer work. But the problem lies with the medical evidence that Mr. Collins provided. The evidence seems to be eomplete[,] but the problem is that the evidence, while supporting the premise that Mr. Collins does have CAD, it does not support that Mr. Collins has debilitating CAD. Mr. Collins clearly has had several stents placed in the arteries that supply blood to his heart. But, with this technology and the skills of the doctors, he has never suffered heart damage because of the disease. And what the stents do is open the diseased vessels so that they are functioning fairly normally. This Committee does note that Mr. Collins’[s] stenting procedures have been very successful even though he had to have one stent redone. But, possibly one of the reasons for that may be that Mr. Collins has not been the most compliant [person] with his medications. And, it also seems that Mr. Collins is not making a serious change in his lifestyle.
This Committee has seen the note from Dr. Feghali that Mr. Collins is unable to work. But, this memo is not supported by his many tests and the medical records. In fact, at the time of termination, Dr. Feghali, a cardiologist, was unable to identify a disabling problem with Mr. Collins’s heart. Mr. Collins says he was told that his heart is very sick. This Committee agrees that Mr. Collins has CAD, but his heart is perfectly functional at this time. This Committee submits that a diagnosis does not equal a disability. Mr. Collins never followed up with a psychiatrist to be evaluated for the possibility of depression or anxiety. He clearly stated that he did not have emotional problems. But it seems to this Committee that there is also no clear or persuasive evidence that Mr. Collins is disabled from his CAD. We would note several doctors’ records that refer to depression or anxiety as the cause of shortness of breath or chest pain. Why he never went to be evaluated for those possibilities, this Committee cannot be sure.
The job of this Committee is to evaluate the evidence before it to look for persuasive proof that Mr. Collins is disabled from a medical condition that is permanent and likely total. It is not here. That being the case, this Committee recommends that Mr. Collins[’s] claim for disability be denied.
The circuit court reversed Board’s decision. In so doing, the circuit court held that “PERS presented no evidence that [Collins] was not disabled while performing his job duties[;] thus, PERS[’s] conclusion was not based on substantial evidence. *1160 The record reflects there is substantial evidence to support the finding that [Collins] has debilitating [CAD].”
¶ 17. However, during the hearing before the Committee, one physician member of the committee noted that Collins’s medical records demonstrated Collins did not have permanent damage to his heart and the stents had restored blood flow to Collins’s heart. That Committee member concluded Collins “could do whatever [he] wanted to do at this point in time.” Another physician member of the Committee noted that Collins’s most recent evaluation by a cardiologist indicated Collins had a “clean bill of health with regard to [his] heart.” None of the medical professionals involved with Collins’s treatment and the review of his claim were able to explain Collins’s symptoms. It is noteworthy that the Committee stated it looked for “persuasive proof that Mr. Collins is disabled from a medical condition that is permanent and likely total.” Even so, the Committee was not able to find any such evidence. Based on the record, we are compelled to find that there was substantial evidence to support the Committee’s conclusion. Moreover, we cannot find that the Committee’s decision was arbitrary or capricious. Therefore, we reverse the judgment of the circuit court and render a judgment to reinstate the Board’s decision.
¶ 18. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED, AND JUDGMENT IS RENDERED TO REINSTATE THE DECISION OF THE BOARD OF TRUSTEES OF THE MISSISSIPPI PUBLIC EMPLOYEES’ RETIREMENT SYSTEM. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, MAXWELL AND RUSSELL, JJ., CONCUR. IRVING, P.J., AND CARLTON, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION. MYERS, J., NOT PARTICIPATING.