## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CC-01843-SCT

*PUBLIC EMPLOYEES' RETIREMENT SYSTEM*

*v.*

*RACHEL MARQUEZ*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/15/1999 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARY MARGARET BOWERS |
| ATTORNEY FOR APPELLEE: | WILLIAM OWEN MAYFIELD |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 12/21/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/11/2001 |

### BEFORE PITTMAN, P.J., MILLS AND WALLER, JJ.

### PITTMAN, PRESIDING JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. The Public Employees' Retirement System of Mississippi ("PERS") appeals a ruling of the Circuit Court of Hinds County which overturned an administrative decision denying permanent disability benefits to Rachel B. Marquez. Marquez applied to the PERS Medical Board for permanent disability as a result of fibromyalgia, depression, chronic fatigue syndrome, and various other medical problems. The Medical Board denied her application on the grounds that there was insufficient objective evidence to support her claim of inability to perform the duties of a teacher. Marquez then appealed to the PERS Disability Appeals Committee ("Committee"). Following a hearing, the Committee affirmed the findings of the Medical Board that there was insufficient evidence to support a claim of disability. The Committee sent its recommendation to the PERS Board of Trustees who adopted the Committee's findings in a written Final Order. Marquez then appealed to the Circuit Court of Hinds County. Circuit Judge Tomie T. Green reversed the decision of the Board of Trustees and granted disability benefits to Marquez, holding that the Board arbitrarily and capriciously ignored substantial evidence in support of disability.

### STATEMENT OF FACTS

¶2. Marquez was a fifth grade special education teacher for students with learning disabilities and/or behavioral problems. Marquez began employment in covered service in 1963 as an employee with Mississippi State University. She has since worked as a teacher for the Picayune Municipal Separate School District, the Jackson Municipal Separate School District, the Rankin County Board of Education,

and the Clinton Public School District. Marquez had earned a total of 15.25 years of service credit as of the 1997 fiscal year, when she terminated her employment with the Clinton Public School District.

¶3. The Public Employees' Retirement System was established in 1952 to provide retirement and other benefits to covered employees of the state and its political subdivisions and instrumentalities. 1952 Miss. Laws 299. PERS provides, in addition to retirement benefits, disability benefits for members who meet the statutory requirements for such benefits. Marquez seeks permanent disability benefits under Miss. Code Ann. § 25-11-113(1)(a) (1999), which provides in pertinent part:

> [A]ny active member in state service who has at least four (4) years of membership service credit may be retired by the board of trustees...provided that the medical board, after a medical examination, shall certify that the member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that the member should be retired....

¶4. According to her employer's statement of job requirements for a teacher, Marquez was frequently required to sit and to perform supervisory responsibilities, occasionally required to stand and to use technical knowledge to write and complete reports, and rarely required to walk, climb, use machines, tools or equipment, or to lift more than ten pounds. Marquez contested the employer's job description in testimony before the Committee. However, she testified that she often used machinery and equipment including overhead and film projectors and computers. She also stated that she used technical knowledge and wrote reports on a daily basis, including individual lesson plans mandated for special education students.

¶5. Marquez has undergone multiple surgeries, and she has been treated for various medical ailments. Over a period of eleven years, from 1986 through 1997, she has been treated for atypical face pain, endometriosis, cervical disc disease, chronic fatigue syndrome, degenerative joint disease, peptic ulcer disease, gastroesophageal reflux disease, irritable bowel syndrome, and migraine headaches. Surgeries have included a hysterectomy, tear duct surgery, mastectomy and breast implants following a breast cancer diagnosis, and cholecystectomy. She has also been diagnosed with depression, hypertension, and fibromyalgia.

¶6. Marquez was last employed with the Clinton Public School District in the 1996/1997 school year. In January of 1997, Marquez left her job. She testified in the hearing before the Committee that she stopped working because of her failing health. Marquez also testified regarding a threat she received from the parent of one of her students in January of 1997. She testified that the incident happened on a Wednesday during the last week in January. She returned to school the following Thursday and Friday, and then remained absent for the rest of the school year.

¶7. In February 1997, Marquez notified her employer that her doctors had recommended she not return to work. The Clinton Public School District honored the rest of Marquez's contract by placing her on sick leave with a three-fourths decrease in pay for the rest of the school year. Marquez was not offered an alternative position with the Clinton Public School District.

¶8. Marquez filed her initial claim with PERS on May 1, 1997. Applications for disability benefits are reviewed by the PERS Medical Board, which is composed of physicians appointed by the PERS Board of Trustees. Miss. Code Ann. § 25-11-119(7) (1999). The Medical Board schedules and decides upon all

medical examinations conducted for disability purposes and then reports its conclusions and recommendations to the Disability Appeals Committee. The Medical Board denied benefits on the ground that there was "insufficient objective evidence" in the records to support the claim of inability to perform the job of a teacher with Clinton Public Schools. Marquez then appealed the Medical Board ruling to the Disability Appeals Committee.

¶9. The Committee conducted a formal hearing on August 10, 1998, and affirmed the finding of the Medical Review Board. In its review, the Committee considered findings of the Medical Review Board, the employer's statement of job requirements for a teacher, letters from Marquez's physicians, medical records, and direct testimony by Marquez. The Committee also concluded that there was "insufficient evidence" to support Ms. Marquez's claim. The Committee sent its recommendation for denial to the PERS Board of Trustees. On August 25, 1998, the Board adopted the Committee's decision to deny benefits as a final judgment.

¶10. Having exhausted all available administrative remedies, Marquez then perfected her appeal to the Circuit Court of Hinds County, First Judicial District. On appeal to the circuit court, Marquez bore the burden of showing that the decision of the PERS Board of Trustees was not supported by substantial evidence. The circuit court found that Marquez had satisfied that burden and concluded that:

> 1) The record reflects substantial evidence of a litany of medical problems which precludes Ms. Marquez from performing her duties as a special education teacher, and there is substantial evidence of permanent disability as defined by § 25-11-113.

> 2) Because substantial evidence of permanent disability existed in the record, the decision by PERS to deny benefits was arbitrary and capricious.

PERS appeals the judgment of the Circuit Court and raises the following issues for review:

> **I. WHETHER THE CIRCUIT COURT ERRED IN HOLDING THAT THE ORDER OF THE PERS BOARD OF TRUSTEES WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

> **II. WHETHER THE CIRCUIT COURT ERRED IN HOLDING THAT THE PERS BOARD OF TRUSTEES ACTED ARBITRARILY AND CAPRICIOUSLY.**

In addition, Marquez raises the following issue:

> **III. WHETHER THE PUBLIC EMPLOYEES RETIREMENT SYSTEM VIOLATED A STATUTORY RIGHT OF MS. MARQUEZ BY DENYING HER BENEFITS WHEN SHE HAD PREVIOUSLY BEEN APPROVED FOR SOCIAL SECURITY BENEFITS.**

## STANDARD OF REVIEW

¶11. This Court's standard of review of an administrative agency's findings and decisions is well established. As set forth in Rule 5.03 of the Uniform Rules of Circuit and County Court Practice, an agency's conclusions must remain undisturbed unless the agency's order: 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights. *Fulce v. Public Employees Ret. Sys.,* 759 So.2d 401, 404 (Miss. 2000); *Davis v.*

*Public Employees' Ret. Sys.*, 750 So.2d 1225, 1229 *(*Miss. 1999); *Brinston v. Public Employees' Ret. Sys.*, 706 So.2d 258, 259 (Miss. Ct. App. 1998). This Court may neither substitute its own judgment for that of the agency which rendered the decision nor reweigh the facts of the case. *Mississippi Pub. Serv. Comm'n v. Merchants Truck Line, Inc.*, 598 So.2d 778, 782 (Miss.1992). A rebuttable presumption exists in favor of the action of an administrative agency, and the burden of proof is on the party challenging an agency's action. *Brinston,* 706 So.2d at 260 (*citing **Mississippi Comm'n on Envtl. Quality v. Chickasaw County Board of Supervisors*, 621 So.2d 1211, 1215 (Miss. 1993)).

<u>DISCUSSION OF LAW</u>

### I. WHETHER THE CIRCUIT COURT ERRED IN HOLDING THAT THE ORDER OF THE PERS BOARD OF TRUSTEES WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE DISABILITY.

¶12. The focus of this Court's analysis is on whether there was substantial evidence in the record to support a finding by PERS that Marquez was not permanently disabled and, therefore, not entitled to disability benefits.

¶13. Substantial evidence means something more than a "mere scintilla" or suspicion. *Mississippi Real Estate Comm'n v. Anding*, 732 So.2d 192, 196 (Miss. 1999) (quoting *Mississippi Real Estate Comm'n v. Ryan*, 248 So.2d 790, 794 (Miss. 1971); *Delta CMI v. Speck*, 586 So.2d 768, 773 (Miss. 1991) (quoting *Johnson v. Ferguson*, 435 So.2d 1191 (Miss. 1983)). Substantial evidence has further been defined by this Court as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Delta CMI*, 586 So.2d at 768.

¶14. The question before the PERS Medical Board, the Disability Committee, and the Board of Trustees was whether or not Marquez's claim met the statutory requirements for receipt of permanent disability benefits. For the purposes of a disability determination, § 25-11-113(1)(a) contains two requirements. First, the medical board, after a medical examination, must certify that the applicant is "mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that the member should be retired." Second, the medical board must apply the statutory definition of "disability" which is:

> [T]he inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by the PERS that is actually offered and is within the same general territorial work area, without material reduction in compensation.

§ 25-11-113(1)(a).

¶15. PERS ultimately concluded that Marquez's medical diagnoses were not sufficiently severe to prevent her from performing her normal work duties. PERS argues on appeal that its decision to deny benefits was indeed supported by substantial evidence. In making its final decision, PERS avers that the Board of Trustees relied on medical documentation which was reviewed by physicians on the PERS Medical Board, the employer's statement of job requirements, and direct testimony by Marquez. PERS claims that its examining physicians relied on Marquez's medical records and supporting documentation of her physical

abilities in making their assessment that she was not permanently disabled. PERS argues that such documentation was substantial evidence upon which the Medical Board could conclude that Marquez's medical diagnoses were not severe enough to prevent her from performing her normal employment duties.

¶16. Three factors emerge as grounds for PERS' decision to deny benefits, although the written orders conclude only that there is "insufficient evidence" to support Marquez's claim. First, because of PERS' opinion that there was insufficient *objective* evidence of permanent disability, and that many of Marquez's more recent medical problems were based on *subjective* complaints. Second, because Marquez was able to continue working despite her medical problems. And third, because Marquez missed one- hundred (100) days of work after an incident in January 1997 involving a threatening phone call from the parent of one of her students.

¶17. Marquez applied for permanent disability benefits in May of 1997. When deciding whether to grant or deny benefits, the PERS Medical Board had before it evidence of numerous medical ailments- -some dating as far back as 1981, and some as recent as 1997. Some of the more recent medical evidence was provided by Dr. Robert E. Estess, who has treated Marquez over the last nineteen years. Dr. Estess provided a Statement of Examining Physician dated April 1997 which stated that Marquez "is currently in the care of a pain clinic" due to hip and leg pain, and that "this pain, together with her anxiety/depression requires acute psychological intervention." Dr. Estes also indicated that a stressful work environment was a factor inhibiting Marquez's psychological progress. He further stated that Marquez was incapable of work for at least a two week period of time. Upon Dr. Estess's recommendation, Marquez was examined by Dr. Robin King.

¶18. Dr. King diagnosed Marquez with depression in 1997; however, Marquez testified that she had "trouble with [her] emotions" as early as 1971, and that she had been hospitalized in either 1984 or 1985 for physical and emotional exhaustion. A statement from Dr. King, dated April 1997 indicated that both Dr. King and Dr. Estess viewed Marquez as being "unemployable at this time," due to the fact that "[s]he has such a dramatic history of medical difficulties." Dr. King recommended an "extended time away from job stress" and a continued "aggressive attack on major depression."

¶19. Marquez's medical records also reveal that she was diagnosed with fibromyalgia in 1996 by Dr. James K. Hensarling. In her testimony before the Disability Appeals Committee, Marquez stated that a rheumatologist, Dr. Laura Carbone, had more recently confirmed the fibromyalgia diagnosis. The circuit court noted this diagnosis and also that Dr. Carbone recommended both physical therapy and a comprehensive pain clinic approach. Marquez testified before the Committee that when she experiences a "flare up" of fibromyalgia, her muscle tissues "burn like fire." The circuit court referenced testimony that the "flare ups" occur at least weekly and sometimes last for two to three days. The circuit court also referenced Marquez's two sacroiliac joint injections in February of 1997, as well as the fact that some ongoing pain was noted by her physician in March of 1997.

¶20. When reviewing an administrative agency's decision, the circuit court must look at the full record before it in deciding whether the agency's findings were supported by substantial evidence. *Mississippi State Bd. of Exam'rs for Social Workers & Marriage and Family Therapists v. Anderson*, 757 So.2d 1079, 1084 (Miss. Ct. App. 2000). While the circuit court performs limited appellate review, "it is not relegated to wearing blinders." *Id.* In reaching its decision that the record presented substantial evidence of permanent disability as defined by § 25-11-113, the circuit court analyzed both medical documentation

and Marquez's direct testimony before the Disability Appeals Committee regarding chronic pain, chronic depression, and weekly "flare ups" of fibromyalgia.

¶21. PERS contends both that the circuit court erroneously substituted its judgment for that of the administrative agency and that the evidence of permanent disability was subjective rather than objective in nature. PERS argues that the circuit court overemphasized the voluminous list of medical ailments experienced by Marquez over the years, while ignoring the fact that many of her medical problems have been successfully treated. While the circuit court did refer broadly to Marquez's "litany of medical problems," it also considered specific complaints and diagnoses as noted above.

¶22. PERS argues that "[i]f the Board of Trustees were to accept *subjective* complaints with the same weight of determination as *objective* complaints, then anyone who wishes to be classified as disabled would need only complain that they cannot perform their regular work duties." If medical diagnoses by licensed physicians are to be labeled "subjective" evidence of medical ailments, it is unclear what PERS would consider to be "objective" evidence.

¶23. An *objective* review of Marquez's medical records clearly indicates that some of Marquez's medical conditions were satisfactorily treated. Some were treated by surgery, others were or are being treated by medication. However, the fact remains that there is recent medical evidence in the record suggesting that Marquez is incapable of performing her duties as a school teacher. The fact that Marquez was able to continue teaching over the years while suffering from certain ailments has little bearing on whether she was able to perform her duties at the time she applied for permanent disability benefits. Her mental health had reached the point of being clinically diagnosed as "major depression...possibly due to her stressful work environment." Also, recent medical records and testimony by Ms. Marquez indicate that her fibromyalgia had begun to manifest itself in the form of "chronic pain."

¶24. PERS also argues that the circuit court gave undue emphasis to Marquez's testimony that she was only able to keep teaching school over the past years because "she was a single parent of three small girls and had 'no choice' but to continue working." PERS claims that the circuit court ignored evidence that at the time Marquez terminated employment in 1997, her daughters were ages twenty-six, twenty-five, and twenty-two; therefore, Marquez had worked for many years without having young children at home to support. Although her daughters cannot be labeled "small children," by any means, Marquez did testify before the Committee that her youngest daughter was still in college at the time of the hearing. Moreover, regardless of any stated reasons for Marquez's continuing to work over the last fifteen years, the fact remains that her medical records indicated *current* medical ailments at the time she terminated her employment. The fact that she was physically able to continue working for such an extended period of time does not negate the possibility that she was unable to continue working when she left the Clinton Public Schools in January of 1997.

¶25. PERS also claims that the circuit court ignored evidence that Marquez may have terminated her employment due to an unpleasant incident at school. Marquez testified at the hearing that she had received a threatening phone call at school from the father of one of her students whereupon she became "upset to the point of hysteria." Two days after this incident, Marquez saw Dr. Bob Estess who recommended that she not return to school for a period of two weeks. Dr. Estess also recommended that Marquez visit Dr. Gray Hilsman and Dr. Robin King. Marquez testified that all three doctors recommended that it was "in [her] best interest not to return to the classroom because of the stress." PERS argues that neither physical nor mental

inability to perform job requirements was the reason Ms. Marquez stopped working; rather, that she only terminated employment after this particular incident. PERS claims that the circuit court ignored testimony regarding the threatening phone call when determining whether PERS' decision to deny benefits was based on substantial evidence.

¶26. While the circuit court did not specifically reference the aforementioned incident, it did note in its Memorandum Opinion and Order the finding of Dr. Estess made two days after the incident. Dr. Estess stated that Marquez's work environment was one factor making psychological progress difficult. The circuit court also considered Dr. King's notes dated February 19, 1997 stating that Marquez was "unemployable at this time" in view of her "history of medical difficulties," and that Dr. King saw a need for ongoing treatment for depression and possible reevaluation of Marquez's medications.

¶27. The facts regarding the disabling extent of Marquez's medical conditions at the time she terminated employment are in dispute. PERS denied permanent disability benefits after review of what it claims was substantial evidence of mainly subjective rather than objective medical complaints. The circuit court reversed the PERS decision based on its view that the record reflects substantial evidence of permanent disability as defined by § 25-11-113.

¶28. This Court has addressed a situation involving a factual dispute between an administrative agency and a circuit court, and has stated:

> So long as substantial evidence exists, an agency's fact finding must be allowed to stand even though there might be room for disagreement on that issue. The [circuit] court is not allowed to substitute its judgment for that of the [administrative agency] where there is substantial evidence...to support the finding.

*Merchants Truck Line,* 598 So.2d at 782. In *Merchants Truck Line*, the circuit court reversed a decision of the Public Service Commission. This Court reversed the circuit court on the grounds that the evidence favoring the agency's decision was "clearly 'substantial'" and noted that although the circuit court might have disagreed with the agency's conclusions, "it had no authority, in its limited appellate role to reevaluate the relative weights of the parties' proof." *Id.* at 782.

¶29. Here, the evidence supporting PERS's decision to deny benefits is clearly not substantial. The only conclusion offered in the PERS orders was that "there is insufficient evidence to support Ms. Marquez's claim that she is permanently mentally or physically incapacitated from performing her job." As such, Marquez's case presents more than simply a disagreement between the circuit court and the agency regarding the agency's conclusions.

¶30. In *McGowan v. Mississippi State Oil & Gas Bd.*, 604 So.2d 312, 313 (Miss. 1992), the State Oil and Gas Board denied an applicant's request for a permit to operate "packerless" salt water disposal wells. The circuit court upheld the denial. This Court vacated the Board's order, and held that the Board's failure to make adequate findings and to explain how it evaluated and balanced certain interests rendered its decision arbitrary and capricious. *Id.* at 312. *McGowan* sets a standard that "administrators say at least minimally why they do what they do so someone can see whether it be arbitrary or capricious." *Id.* at 322. *McGowan* went on to say that "[w]e know that the Board rejected McGowan's packerless wells, but we are not quite sure why." *Id.* at 323. *McGowan* emphasized the need for understanding why an agency rules in a certain way in order to determine whether the Board acted arbitrarily or capriciously and whether

substantial evidence undergirds its actions. *Id.* at 323.

¶31. Marquez's situation is similar in that the PERS board of trustees acted, but we do not know what it was about the evidence that persuaded the board that Marquez was not disabled. PERS put forth no controverting evidence in the face of various medical diagnoses made by various credible doctors. When medical evidence and testimony given by Marquez is contrasted with PERS's rationale for denial of benefits, the evidence supporting PERS's decision to deny benefits appears insubstantial. The circuit court judge reviewed the evidence before her and found that there was sufficient evidence to grant permanent disability benefits. It is within the power of the circuit court to reverse PERS' decision if such decision was not supported by substantial evidence. As stated earlier, substantial evidence means "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Delta CMI*, 586 So.2d at 768. In support of its conclusion, PERS has stated only that Marquez lacks sufficient "objective" medical evidence. In light of the objective diagnoses made by Marquez's treating physicians, PERS's conclusion is simply not substantiated by the record.

¶32. When this Court reviews a decision by a chancery or circuit court concerning an agency action, it applies the same standard of review those courts are bound to follow. *Chickasaw County Bd. of Supervisors*, 621 So.2d at 1215. Applying the correct standard of review to PERS's Order, this Court must affirm the judgment of the circuit court. PERS's denial of benefits was not based on substantial evidence. Rather, Marquez was denied benefits because PERS' characterized her medical evidence as "subjective," because she stopped working soon after receiving a threatening phone call at school, and because she was able to continue working for many years despite her medical problems.

¶33. The decision to deny permanent disability benefits was not based on substantial evidence, and is thereby rendered arbitrary and capricious. This Court affirms the judgment of the circuit court in reversing PERS's denial of benefits.

### II. WHETHER THE CIRCUIT COURT ERRED IN HOLDING THAT THE PERS BOARD OF TRUSTEES ACTED ARBITRARILY AND CAPRICIOUSLY.

¶34. An administrative agency's decision is "arbitrary" when it is not done according to reason or judgment, but depending on the will alone. *Burks v. Amite County Sch. Dist.*, 708 So.2d 1366, 1370 (Miss. 1998); *McGowan*, 604 So.2d at 322. An act is "capricious" if it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles. *Burks*, 708 So.2d at 1370.

¶35. As previously discussed, the decision by PERS to deny permanent disability benefits was not based on substantial evidence. If an administrative agency's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious. *Mississippi State Dep't of Health v. Natchez Community Hosp.*, 743 So.2d 973, 976 (Miss. 1999).

### III. WHETHER THE PUBLIC EMPLOYEES RETIREMENT SYSTEM VIOLATED A STATUTORY RIGHT OF MS. MARQUEZ BY DENYING HER BENEFITS WHEN SHE HAD PREVIOUSLY BEEN APPROVED FOR SOCIAL SECURITY BENEFITS.

¶36. Because this issue was raised neither in Marquez's appeal to the circuit court, nor by PERS in its appeal to this Court, we need not consider its merit. The lower court did not address denial of a statutory right based on the fact that Marquez received a Social Security disability benefit.

¶37. Marquez was approved for Social Security disability in July 1997 for multiple impairments, primarily fibromyalgia and depression. It was previously the policy of PERS that any member who had been approved for Social Security benefits would also be approved for PERS benefits. That policy has since been discontinued. *See Fulce*, 759 So.2d at 403. The plain language of § 25-11-113 reflects this change in policy by providing that "the board of trustees *may* accept a disability medical determination from the Social Security Administration in lieu of a certification from the medical board." (emphasis added). The statute is permissive and does not require PERS to accept the findings of the Social Security Administration. Marquez's argument is therefore without merit.

## CONCLUSION

¶38. Because PERS's decision to deny permanent disability benefits to Marquez was not based on substantial evidence and was therefore arbitrary and capricious, the judgment of the Hinds County Circuit Court is affirmed.

¶39. **AFFIRMED.**

**PRATHER, C.J., BANKS, P.J., McRAE, SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR.**