CARLSON, Presiding Justice,
dissenting:
¶ 34. Because I disagree with the majority as to whether Dorothy Knight met her burden of proof for disability retirement benefits, I respectfully dissent.
¶ 35. Knight retired from the State in 2006 and sought non-duty-related disability benefits for pain in her feet, which she claimed made it impossible to do her job.[3] PERS denied her request for disability, stating that it could not award disability for pain if Knight could not produce an objective reason or medical illness causing the pain. Knight did not produce sufficient medical evidence and, although she saw many doctors, none said that she was disabled. Both the circuit court and Court of Appeals affirmed PERS’ decision.
¶ 36. Knight presents two arguments to this Court: (1) PERS’ denial of disability retirement benefits was arbitrary and capricious, because PERS incorrectly reasoned that there was “no statutory provision” under which disability could be awarded “for pain when no objective reason for that pain can be produced” and (2) the Court of Appeals erred in relying on Laughlin v. Public Employees’ Retirement System, 11 So.3d 154 (Miss.Ct.App.2009).
¶ 37. Like all administrative-agency decisions, review of a PERS decision is limited. Pub. Employees’ Ret. Sys. v. Ross, 829 So.2d 1238, 1240 (Miss.2002). “There is a rebuttable presumption in favor of a PERS ruling.” Pub. Employees’ Ret. Sys. v. Dishmon, 797 So.2d 888, 891 (Miss.2001). A decision or order from PERS will remain undisturbed unless it “(1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates one’s constitutional rights.” Fulce v. Pub. Employees’ Ret. Sys., 759 So.2d 401, 404 (Miss.2000) (internal citations omitted). PERS is the finder of fact, and a reviewing court must not reweigh the facts of the ease or substitute its own judgment for that of PERS. Dishmon, 797 So.2d at 891. The reviewing court must determine only “whether substantial evidence existed to support the agency decision.” Id. Substantial evidence is “such relevant evidence as reasonable minds might accept as adequate to support a conclusion” and the evidence must be “more than a mere scintilla or suspicion.” Pub. Employees’ Ret. Sys. v. Marquez, 774 So.2d 421, 425 (Miss.2000) (internal citations omitted).
I. Whether PERS’ denial of disability benefits was arbitrary and capricious.
¶ 38. Knight claims that PERS’ denial of disability retirement benefits was arbi *922 trary and capricious, because PERS incorrectly reasoned that there was “no statutory provision” under which disability could be awarded “for pain when no objective reason for that pain can be produced.”[4] From this statement, one could conclude that PERS found Knight’s testimony and claims of pain to be believable. However, without sufficient objective medical evidence, PERS found no basis on which to award benefits. Mississippi law and PERS’ own regulations require “objective medical evidence” in order to award disability benefits.
¶ 39. Mississippi Code Section 25-11-113(1) sets forth the requirements for an award of disability benefits:
(a) ... any active member ... may be retired by the board of trustees ... provided that the medical board, after an evaluation of medical evidence that may or may not include an actual physical examination by the medical board, certifies that the member is mentally or physically incapacitated for the further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired;.... For the purposes of disability determination, the medical board shall apply the following definition of disability: the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by the Public Employees’ Retirement System (Section 25-11-101 et seq.) that is actually offered and is within the same general territorial work area, without material reduction in compensation ....
Miss.Code Ann. § 25-11 — 113(l)(a) (Supp. 2012). According to this section, two requirements must be met for PERS to award disability benefits. See Marquez, 774 So.2d at 425-26. First, the applicant must provide the Medical Board with sufficient “medical evidence” to show that he or she is “mentally or physically incapacitated for the further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired[.]” Miss.Code Ann. § 25 — 11—113(l)(a) (Supp. 2012). Second, the Medical Board must apply the definition of “disability” from Section 25 — 11—113(l)(a), which is:
[T]he inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by the PERS that is actually offered and is within the same general territorial work area, without material reduction in compensation.
Id. at 426 (quoting Miss.Code Ann. § 25-11 — 113(l)(a)). Knight, as the applicant for disability benefits, has the burden of proving that “she is in fact disabled.” Pub. Employees’ Ret. Sys. v. Howard, 905 So.2d 1279, 1284 (Miss.2005) (quoting Dishmon, 797 So.2d at 888).
¶ 40. PERS expounded on Section 25-11-113 and eligibility for disability benefits in its Board Regulations. PERS Board Regulation 45A, Section 105, provides in part:
2. The member shall submit medical evidence of the disability to the Medical Board for review. The Medical Board may require an independent *923 medical evaluation or such other examination or report as is necessary to determine the member’s eligibility for benefits....
To be considered eligible for disability benefits, the Medical Board must certify to the Board of Trustees (i) that the member is mentally or physically incapacitated for the further performance of duty, (ii) that such incapacity is likely to be permanent, and (in) that the member should be retired.
3. For purposes of § 25-11-113, medical evidence shall be defined as “objective medical evidence,” which means: reports of examinations or treatments; medical signs which are anatomical, physiological, or psychological abnormalities that are observed and documented by medical professionals; psychiatric signs which are medically demonstrable phenomena indicating specific abnormalities of behavior, affect, thought, memory, orientation, or contact with reality; or laboratory findings which are anatomical, physiological, or psychological phenomena that are shown by medically acceptable laboratory diagnostic techniques, including, but not limited to, chemical tests, electrocardiograms, electroencephalograms, X-rays, and psychological tests. Non-medical information not documented by test results, such as an applicant’s description of pain, is not considered objective medical evidence.
4. The applicant is responsible for providing sufficient objective medical documentation to the Medical Board in support of his or her claim for disability. PERS does not have the burden of proving that an applicant is not disabled. The Medical Board shall certify to the Board of Trustees whether, based on the objective medical evidence, the member is mentally or physically incapacitated for further performance of duty and that such incapacity is likely to be permanent and whether, based on all other facts, the member should be retired on a disability allowance.
PERS Board Regulation 45A, Section 105 (emphasis added). PERS requires “objective medical evidence” to support a disability claim, and the regulation specifically provides that “an applicant’s description of pain” is not objective medical evidence. In the absence of such medical evidence, the board does not have discretion to award disability benefits. The Disability Appeals Committee informed Knight of the “objective medical evidence” standard several times in the hearings, but Knight failed to provide sufficient medical evidence. Although several witnesses testified on Knight’s behalf, the Committee explained that lay testimony cannot overcome the lack of medical evidence. Knight failed to provide sufficient medical evidence, and PERS properly applied Mississippi law and its own regulations in denying disability benefits.
¶ 41. I am troubled by the majority’s failure to address PERS Board Regulation 45A, Section 105, which expressly references Section 25-11-113, and which forbids an award under the facts of this case. There is no challenge before us to the validity or constitutionality of the regulation. If it is a valid regulation, the majority should either apply it or explain why it does not. If the majority finds that the regulation is invalid or unconstitutional, then the parties and the Attorney General should be invited to brief the issue. And equally troubling is the fact that, in deciding this case, the majority ignores the regulation but leaves it on the books without any guidance as to whether it applies to future cases.
*924 ¶ 42. Knight asserts that “appellate courts in Mississippi have noted in numerous PERS disability cases the existence of pain leading to a finding of disability.” Knight is correct that pain is often a symptom in disability cases. See Pub. Employees’ Ret. Sys. v. Dearman, 846 So.2d 1014, 1017 (Miss.2003) (applicant had multiple “debilitating medical conditions,” including fibromyalgia, chronic migraines, chronic fatigue syndrome, cervical myofascial pain, and semi-paralysis on the entire left side of her body, among other things); Pub. Employees’ Ret. Sys. v. Shurden, 822 So.2d 258, 264 (Miss.2002) (applicant diagnosed with major depression, somatoform pain disorder, and fibromyalgia, among other things). See also Howard v. Pub. Employees’ Ret. Sys. of Miss., 971 So.2d 622, 624 (Miss.Ct.App.2007) (applicant had chronic pain, weakness, fatigue, and severe fibromyalgia); Pub. Employees’ Ret. Sys. v. Waid, 823 So.2d 595, 598 (Miss.Ct.App.2002) (applicant had severe fibromyalgia, chronic pain, HH & GERD, and anxiety-depression).[5] I agree that pain as a component of disability, supported by objective medical evidence, could be sufficient for a finding of disability. However, in each of the cases cited here, at least one doctor concluded that the applicant was permanently disabled. In Knight’s case, not one of the many physicians who examined Knight was able to say that she was disabled. The documentation of pain in the record is based solely on Knight’s complaints, and no objective medical evidence was provided to support her claim. PERS did not say that pain cannot be disabling, but medical evidence was needed to support the claim.
¶ 43. In support of its conclusion that PERS should have found Knight to be disabled, the majority refers to a statement made by Dr. Blount that Knight could have a type of peripheral neuropathy that may not have been detected on the electrodiagnostic evaluations that he reviewed. The majority also notes that Dr. Peeples found Knight’s symptoms to be suggestive of peripheral neuropathy. Neither physician conclusively determined that Knight had peripheral neuropathy, and neither physician made a finding of disability. Of all the physicians who examined Knight, not one made a conclusive diagnosis or found Knight to be disabled. The applicant for disability has the burden of proof, and Knight was responsible for providing sufficient objective medical evidence to support her claim. See Howard, 905 So.2d at 1284; Dishmon, 797 So.2d at 888.
¶ 44. It is not the function of this Court to determine whether Knight presented sufficient evidence to prove disability. We are charged only with determining whether PERS’ decision was supported by substantial evidence. Doyle v. Pub. Employees’ Ret. Sys., 808 So.2d 902, 905 (Miss.2002) (quoting Dishmon, 797 So.2d at 891). The record contains substantial evidence to support PERS’ decision, and the decision was not arbitrary and capricious. At the time of her hearing, Knight had suffered from this foot pain for nearly two decades. Although she had seen doctors for a myriad of problems, in all that time, she mentioned the foot pain to doctors on only six occasions. Those complaints were made to her family care doctor and her neurologist. In fact, she saw her family care doctor one month before she applied for disability benefits and again two months after applying for benefits, and she failed to mention any foot pain on either occasion.
¶ 45. When Knight did mention her foot pain to doctors, she was noncompliant with *925 their orders. After she broke several toes, she refused to wear a east. She was prescribed pain medicine, but she claimed that it did not work, so she quit taking it and did not request a different medication. Her family care doctor suggested she see an orthopedist about a bunion, but she refused. She was referred to an orthotist to be fitted for more supportive shoes, but she did not go. At the December 2006 hearing, she stated that she had been wearing Keds shoes on a daily basis, which arguably provide absolutely no support. Knight did not attempt to use any device to aid in walking, and she sought minimal help at work with the duties that caused her increased pain.
¶46. In November 2006, while Knight was in the process of appealing the Medical Board’s denial of benefits, a podiatrist performed surgery on her right foot to correct several broken toes and a broken bone in the top of her foot, to remove bunions, and to remove a lesion from the bottom of her foot. At the initial hearing before the Disability Appeals Committee one month after that surgery, she mentioned that she needed to have a similar surgery on her left foot, but that she was planning to wait until the next year. At the second hearing in August 2007, Knight still had not had surgery on the left foot.
¶ 47. Again, the burden is not on PERS to prove that a claimant is not disabled; the burden is on the claimant to prove that she is disabled. Howard, 905 So.2d at 1284; Dishmon, 797 So.2d at 888. PERS gave Knight multiple opportunities to provide additional medical evidence. Since Knight had not seen a doctor specifically for her feet, PERS sent her to two doctors for two separate independent medical evaluations and to a third doctor for a new nerve-conduction study. None of these doctors made a finding of disability. Knight failed to present sufficient objective medical evidence to support her claim of disability; therefore, she failed to satisfy her burden of proof.
¶ 48. While I do not doubt that Knight is a trustworthy person or that she experiences pain, an applicant’s complaint of pain alone is not sufficient evidence to support an award of disability benefits. After eighteen years of this pain, Knight was unable to obtain a diagnosis, much less a finding of disability, from a physician. Knight argues that a doctor has never said that she is not disabled. Unfortunately for Knight, that is not the standard. To receive disability benefits, Knight must prove that she is disabled. The fact that no doctor has said she is not disabled is not equivalent to a finding of disability.[6] The Court of Appeals was correct that “[n]ot a single doctor concluded Knight was permanently incapacitated or incapable of returning to her employment as required under the statute.” Knight v. Pub. Employees’ Ret. Sys. of Miss., 108 So.3d 941, 947 (¶26) (Miss.Ct.App.2011), reh’g denied (May 15, 2012). Knight failed to prove her disability according to the statutory requirements for doing so; PERS’ denial was supported by substantial evidence and should be affirmed.
II. Whether the Court of Appeals erred in relying on Laughlin v. Public Employees’ Retirement System.
¶49. Knight claims that the Court of Appeals erred in relying on the Laughlin *926 case and misapplied the facts of Laughlin to her case. The Court of Appeals stated:
Like the Laughlin case, each of Knight’s doctors either offered no opinion regarding Knight’s disability or determined Knight was not disabled. Not a single doctor concluded Knight was permanently incapacitated or incapable of returning to her employment as required under the statute. Although one doctor stated her symptoms were suggestive of peripheral neuropathy, which could suggest the possibility of disability, he ultimately concluded she was not disabled.
Knight, 108 So.3d 947 (¶ 26) (emphasis in original). Knight claims that the Court of Appeals’ “reliance on Laughlin [wa]s clearly wrong” because no doctor found that Knight was “not disabled.”
¶ 50. Actually, the Court of Appeals’ reliance on Laughlin could not be more appropriate. Knight is correct that no doctor has said that she is “not disabled,” but the same was true of Laughlin. Laughlin produced medical records from four physicians. Laughlin, 11 So.3d at 156. One doctor “declined to make a determination as to whether Laughlin was disabled,” stating that she was not qualified to do so. Id. The other three physicians made diagnoses, opined as to prognosis for recovery, and/or indicated whether Laughlin had reached maximum medical improvement. Id. at 156-57. None of the doctors said that Laughlin was or was not disabled. The Court of Appeals distinguished Laughlin’s case from two factually similar cases: Stevison v. Public Employees’ Retirement System, 966 So.2d 874 (Miss.Ct.App.2007) and Public Employees’ Retirement System v. Waid, 823 So.2d 595 (Miss.Ct.App.2002).
In each of these cases, on facts very similar to the facts in today’s case, we either reversed or approved the circuit court’s reversal of PERS’s decision denying disability benefits to the claimants. However, these cases are distinguishable from the case before us, as in each of them a physician stated emphatically that the claimant was disabled. See Stevison, 966 So.2d at 880 (¶ 19); Waid, 823 So.2d at 598 (¶ 10). Unlike the physicians in Stevison and Waid, all of the physicians in our case either offered no opinion regarding Laughlin’s disability or concluded that she was not disabled.
Laughlin, 11 So.3d at 160. Perhaps the Court of Appeals’ language in Laughlin, which was repeated in Knight, that the physicians “concluded that she was not disabled” is ambiguous. The more accurate statement would be that the physicians “did not make a finding in regard to disability.” Although the Court of Appeals’ language may be somewhat ambiguous, I find Knight’s argument that her case is distinguishable from Laughlin to be without merit.
¶ 51. In conclusion, it is my opinion that Knight failed to meet her burden of proving disability according to the statutory requirements for doing so, and PERS’ decision to deny disability benefits was supported by substantial evidence and was not arbitrary or capricious. Therefore, I would affirm. Because the majority holds otherwise, I respectfully dissent.
DICKINSON, P.J., RANDOLPH AND LAMAR, JJ„ JOIN THIS OPINION.

. Knight was a committee assistant for the Mississippi State Senate. As the majority notes, during the legislative session, Knight was required to be on her feet most of the day, walk up and down stairs, stand at a copy machine, prepare for committee meetings, and perform administrative and clerical tasks. The legislative session lasts approximately three months each year. Miss. Const, art. 4, § 36. There was no testimony regarding Knight’s duties as a committee assistant during the remainder of the year when the Legislature was not in session.

. Knight selected this one sentence from the Disability Appeals Committee’s well-reasoned, fifteen-page recommendation.

. These are a few of the cases cited by Knight in support of her argument that the "existence of pain [can] lead[] to a finding of disability.”

. I note that the majority lists Knight’s extensive medical history, seemingly as evidence to support her claim for disability. (Maj.Op-¶ 17.) However, most of the items listed — such as hypertension, migraine headaches, gallstones, removal of breast implants, hysterectomy, among others — are entirely unrelated to Knight's foot pain, which was the sole basis for her application for disability benefits.