ISHEE, J.,
for the Court:
¶ 1. The Public Employees’ Retirement System of Mississippi (PERS) appeals the decision of the Hinds County Circuit Court reversing the administrative decision to deny benefits to Vickie Comardelle. Co-mardelle applied for duty-related retirement disability benefits on May 25, 2008, after she twisted her ankle at work, which she claims prevented her from performing her required job duties. On June 22,2010, following two hearings on Comardelle’s application, PERS entered its order approving and adopting the PERS Disability Appeals Committee’s recommendation and findings of fact denying Comardelle’s request for disability benefits. Comardelle appealed the decision to the Hinds County Circuit Court, which found that PERS’s decision to deny Comardelle benefits was not based on substantial evidence and reversed the order. Aggrieved, PERS filed the instant appeal.
STATEMENT OF FACTS
¶2. Comardelle was employed as a teacher’s assistant by the Pearl River County School District for a little over five years. On October 7, 2003, Comardelle slipped and twisted her right ankle on some steps near the ladies’ lounge while at work. At the time she fell, Comardelle was teaching art as an activities teaching assistant. After she twisted her ankle, she was transferred to the health and life-skills class because it did not require as much standing and walking during the day, and by that time, she was using arm crutches to help her stand and walk. Comardelle first saw Dr. Simon Finger on October 9, 2003, for ankle pain, and she was diagnosed with an ankle sprain, prescribed Darvocet, and given an ankle corset to wear. Dr. Finger ordered an MRI and a nerve conduction study (NCS). The MRI was performed on November 23, 2003, and showed a small benign-looking cyst in the neck of the talus; the NCS was given on December 12, 2003, and came back with normal results.
¶ 3. On February 20, 2004, Dr. Keith Melancon performed surgery on her ankle, *986 at which time he did a tarsal tunnel release and an anterior tarsal tunnel release at Southern Surgery Center in Hattiesburg, Mississippi, to take pressure off the nerves in Comardelle’s foot, and he removed the small benign cyst on her ankle. Comardelle followed up with Dr. Melancon every two months after the surgery. At each visit, Comardelle complained of pain in her right foot and ankle. On March 9, 2004, she went to the emergency room due to right lower leg pain and fever. On November 1, 2004, Dr. Melancon performed an MRI, which showed an area of resolving hemato-ma or cellulitis, but was otherwise normal. On November 9, 2004, Dr. Melancon saw Comardelle with complaints of nerve pain. He diagnosed her with early reflex sympathetic dystrophy (RSD), which occurred following her ankle sprain, and referred her to Dr. Thom Tarquinio with University Orthopaedics. Dr. Tarquinio performed a physical examination of Comardelle on February 10, 2005, and reviewed x-rays of her right ankle before he also diagnosed her with complex regional pain syndrome (CRPS), formerly known as RSD. Dr. Me-lancon then referred Comardelle to Dr. Matthew C. Wallack for a series of lumbar sympathetic blocks in March, April, and May 2005 to help relieve her pain. The sympathetic blocks seemed to relieve the pain for about two weeks after each injection. Dr. Wallack also diagnosed her with CRPS. Next, on January 12, 2006, Dr. Melancon referred Comardelle to Dr. Todd Sitzman at Advanced Pain Therapy LLC, who agreed with the CRPS diagnosis, and believed she would be a good candidate for a lumbar spinal neurostimulator. Comar-delle then received three more sympathetic blocks from Dr. Wallack in January, February, and March 2006, with the same initial successful results that she had in 2005; but the blocks wore off quickly.
¶ 4. Before implanting the lumbar spinal neurostimulator, Dr. Sitzman referred Co-mardelle to Angela Koestler Ph.D. for a psychological evaluation. Dr. Koestler opined that Comardelle could undergo the implantation procedure, and she diagnosed Comardelle with adjustment disorder with anxiety and depressed mood based on the symptoms of anxiety and depression she was experiencing due to her concerns about her persistent pain and diminished quality of life. On June 2, 2006, Dr. Sitz-man implanted a lumbar spinal neurosti-mulator that was successful in significantly reducing the pain Comardelle was experiencing in her right lower extremity for a couple of months. However, in September 2006, Comardelle began complaining of pain in her left buttock. After treating the site with no improvement, Dr. Sitzman recommended a pocket site revision, which was done on January 26, 2007. She continued to see Dr. Sitzman throughout 2007 with complaints of pain and weakness in her lower extremities.
¶ 5. Comardelle sought psychological counseling from Geralyn Datz Ph.D. to help her cope with her anxiety regarding her prognosis. Dr. Datz performed several tests and recommended she enroll in a twelve-session pain-management program and six sessions of individual psychotherapy for relaxation training. Dr. Datz diagnosed Comardelle with “Axis I—pain disorder with associated psychological factors and a general medical condition,” and Axis III—CRPS.
¶ 6. On October 1, 2008, PERS sent Comardelle to Dr. David Collipp of New-South NeuroSpine for an independent medical evaluation (IME). Dr. Collipp examined Comardelle and was of the opinion that there was no objective basis for the CRPS-I diagnosis. He believed that Dr. Melancon and Dr. Sitzman based their restrictions on subjective complaints; he did not think there were any restrictions for *987 Comardelle, regarding her work injury or otherwise.
¶7. PERS also referred Comardelle to Julie Walker, an occupational therapist at Methodist Outpatient Rehabilitation, on January 19, 2009, for a functional capacity evaluation (FCE). Walker observed multiple times that Comardelle “demonstrated significant symptom magnification during evaluation.” Walker noted that Comar-delle had inconsistent tremors that were “volitional” at times and then absent at times. Walker stated that it was very difficult to make any recommendations because she believed Comardelle was magnifying and exaggerating her symptoms and because of the inconsistencies that she noted during Comardelle’s evaluation.
¶8. Comardelle next went to see Dr. Jeff Summers on April 17, 2009. Dr. Summers noted that Comardelle was very anxious and that she appeared to have “tremors” in her upper and lower extremities; however, “the tremors would extinguish completely with distraction.” On the day of her examination, Comardelle reported that her pain scale was a seven out of ten, and that, unless she was completely sedentary, her pain scores were never lower than that. Dr. Summers did not believe that Comardelle was suffering from CRPS at the time of the examination, but he did believe that she had “at some point.” He attributed her leg discoloration to the chronic use of her electric blanket, since the anterior thigh and leg that were in contact with the blanket were more discolored than the posterior leg where the blanket was lightly wrapped, and the backs of her thighs were not discolored at all. He also included in his report the fact that in 2005, which was after her accident, Comar-delle was able to run and swim with her children. Dr. Summers concluded by acknowledging that he did not have her most recent medical records, but he believed her problems involved a somatization or conversion disorder.
¶ 9. Finally, PERS ordered a complete psychiatric evaluation from forensic consultant John Montgomery. After evaluating Comardelle in his office on November 21, 2009, and reviewing Dr. Koestler’s psychological report, Dr. Montgomery found that, in his opinion, Comardelle’s primary psychiatric diagnosis was undifferentiated somatoform disorder and depression, secondary to a medical condition and pain disorder. He believed that Comardelle’s physical limitations were not consciously feigned, but appeared to be psychogenic in nature. He further stated that while “the onset of Ms. Comardelle’s symptoms appear[ed] to have occurred in the context of two work-related injuries[,] it [was his] opinion that other interpersonal and psychological factors [were] likely contributing to her level of distress and impairment.” Finally, Dr. Montgomery concluded that “[i]n her current state, Ms. Comardelle [was] not able to pei’form the duties of her former profession. To what extent her psychogenic/somatoform symptoms contribute[d] to her overall disability status [was] unknown.”
¶ 10. The Disability Appeals Committee held two hearings on Comardelle’s application for benefits on September 18, 2009, and March 5, 2010. PERS entered its order approving and adopting the Committee’s recommendation and findings of fact denying Comardelle’s request for disability benefits on June 22, 2010. Comardelle appealed this decision to the Hinds County Circuit Court. The circuit court found the PERS Board of Trustees’ (Board) decision to be arbitrary and capricious and reversed the decision. Aggrieved, PERS filed this appeal.
STANDARD OF REVIEW
¶ 11. Uniform Rule of Circuit and County Court Practice 5.03 limits this *988 Court’s ability to reverse an agency’s decision unless the decision was: (1) not supported by substantial evidence, (2) arbitrary and capricious, (3) beyond the agency’s power to make, or (4) in violation of the complainant’s statutory or constitutional rights. Case v. Pub. Employees' Ret. Sys., 973 So.2d 301, 310 (¶ 20) (Miss.Ct.App.2008). The Mississippi Supreme Court has held: “the question here is not whether there was evidence in support of [the claimant’s] disability, but whether there was substantial evidence to support the finding of the administrative agency. The standard of review limits this Court to reviewing the lower court’s decision to determine whether the record can support this finding.” Thomas v. Pub. Employees’ Ret. Sys. of Miss., 995 So.2d 115, 120 (¶ 21) (Miss.2008) (quoting Pub. Employees’ Ret. Sys. v. Dishmon, 797 So.2d 888, 892 (¶ 12) (Miss.2001)).
DISCUSSION
¶ 12. Before discussing the merits of this case, we will address PERS’s motion to strike portions of Comardelle’s brief and attached exhibits. The Mississippi Supreme Court passed the motion to this Court for consideration with the merits of the appeal, and it is now time for this Court to make a ruling. PERS contends that Comardelle included matters in her brief and exhibits that were outside of the record at the administrative hearing or circuit court level. Specifically, PERS argues that pages twenty-two and twenty-three of Comardelle’s brief contain the results of Comardelle’s Mississippi Workers’ Compensation and United States Social Security Administration claims. Comar-delle concedes that the results post-date the PERS administrative proceedings and the PERS Board of Trustees’ final order denying Comardelle’s request for benefits; however, Comardelle argues that the workers’ compensation claim was part of the record before the Hinds County Circuit Court when it issued its opinion and order on August 9, 2013.
¶ 13. Mississippi Code Annotated section 25-11-120(2) (Rev.2010) makes it clear that an appeal of this nature “shall be made solely on the record before the board.” It is well established that “[tjhis Court does not rely on assertions made in briefs, but only on facts preserved within a record certified by law.” Burnett ex rel. Islam v. Burnett, 792 So.2d 1016, 1019 (¶ 8) (Miss.Ct.App.2001). Comardelle’s PERS hearing was held on September 18, 2009, and the PERS Board of Trustees’ final order denying benefits was filed on June 22, 2010. The order approving settlement from the Workers’ Compensation Commission was issued on October 20, 2011, and the final decision of the Social Security administrative law judge finding Comardelle disabled was issued January 11, 2013. Upon reviewing the record, this Court finds no evidence that the circuit court considered these results or any other evidence outside of the record when making its decision. There is no reference related to either claim in the order handed down from the Hinds County Circuit Court. Accordingly, we hereby grant PERS’s motion to strike portions of Co-mardelle’s brief.
I. WHETHER THE DENIAL OF BENEFITS WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.
¶ 14. As set forth by the standard of review, this Court’s purpose is to determine whether there was substantial evidence in the record to support PERS’s finding that Comardelle was not entitled to disability benefits. The phrase “substantial evidence” requires more than a “mere scintilla” or suspicion. Pub. Employees’ Ret. Sys. v. Marquez, 774 So.2d 421, 425 (¶ 13) (Miss.2000). It has been defined by *989 the Mississippi Supreme Court as “such relevant evidence as reasonable minds might accept as adequate to support a conclusion.” Id (citation omitted). Mississippi Code Annotated section 25—11— 113(l)(a) (Supp.2014) contains two requirements when making a disability determination. First, after evaluating the medical evidence, the medical board must “certify] that the member is mentally or physically incapacitated for the further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired[.]” Id. Next, the medical board must apply the statute’s definition of disability:
For the purposes of disability determination, the medical board shall apply the following definition of disability: the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by the Public Employees’ Retirement System ... that is actually offered and is within the same general territorial work area, without material reduction in compensation.

Id.

¶ 15. The Board found that Comar-delle’s doctors failed to establish that her complaints were supported by medical findings. The Board looked to the fact that Dr. Sitzman, Dr. Summers, and Dr. Collipp stated that Comardelle’s RSD exhibited unusual and atypical symptoms, and found the more accurate diagnosis to be somatization. PERS points out that Comardelle fell and twisted her ankle in October 2003 and continued to work full-time for nearly five additional years until May 2008 when her teaching position was converted to a position she was not qualified to teach because she lacked the proper certification. It was at that time that Co-mardelle decided she was going to retire. On appeal, the circuit court judge found that PERS failed to present any evidence that Comardelle was not disabled pursuant to section 25-11-113. As a result, the circuit court found that PERS’s conclusion was not based on substantial evidence, and issued an order reversing PERS’s decision.
¶ 16. Upon reviewing the extensive record in this case, this Court finds that PERS’s decision that Comardelle was not permanently disabled was, in fact, supported by substantial evidence. First, when Dr. Collipp examined Comardelle on October 1, 2008, he found that “[h]er EMG, MRI, and x-rays were normal,” her restrictions seemed to be subjective, and there was no objective basis for the CRPS-I diagnosis. Next, Julie Walker complained after performing the FCE that she was unable to make any recommendations due to Comardelle’s inconsistencies and exaggerations throughout the evaluation. Finally, Dr. Summers stated after examining her on April 17, 2009, that although she may have had CRPS in her right lower extremity in the past, he could not find any current signs or symptoms consistent with CRPS. Based on the foregoing, it appears that PERS’s conclusion was consistent with testimony from multiple healthcare providers. As such, we cannot say that PERS’s decision was not based on substantial evidence, nor was it arbitrary or capricious.
II. WHETHER THE DENIAL OF DUTY-RELATED DISABILITY BENEFITS WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.
¶ 17. PERS also argues that, if this Court finds Comardelle to be disabled, Mississippi Code Annotated section 25-11-114(6) (Supp.2014) contains two additional *990 requirements that must be met in order for her to be eligible for duty-related benefits. Section 25-11-114(6) states:
Regardless of the number of years of creditable service, upon the application of a member or employer, any active member who becomes disabled as a direct result of an accident or traumatic event resulting in a physical injury occurring in the line of performance of duty, provided that the medical board or other designated governmental agency after a medical examination certifies that the member is mentally or physically incapacitated for the further performance of duty and the incapacity is likely to be permanent, may be retired by the board of trustees on the first of the month following the date of filing the application but in no event shall the retirement allowance begin before the termination of state service.
¶ 18. As previously discussed, it is undisputed that Comardelle twisted her right ankle while at work. Comardelle argues that her twisted right ankle caused her to suffer from CRPS, which has left her disabled. However, PERS points out that several of the examining physicians, as well as an occupational therapist, did not believe Comardelle’s diagnosis of CRPS was supported by medical findings. After thoroughly reviewing the medical records in this case, we find ample evidence to support PERS’s findings indicating that Comardelle’s condition is not disabling in accordance with the statute. With regard to this issue, this Court finds, once again, that PERS’s decision was supported by substantial evidence and was neither arbitrary nor capricious.
CONCLUSION
¶ 19. This Court finds that PERS’s decision to deny duty-related retirement disability benefits to Comardelle was based on substantial evidence and was neither arbitrary nor capricious. The judgment of the Hinds County Circuit Court is hereby reversed, and the judgment of the Board is reinstated.
¶ 20. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
GRIFFIS, P.J., BARNES, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., AND IRVING, P.J.